STATE OF NORTH CAROLINA v. HORACE BENJAMIN BEACH, JR.

No. 86A92

(Filed 4 June 1993)

1. **Jury § 257 (NCI4th)— murder—jury selection—State's use of peremptory challenges against blacks—no error**

     There was no error in the prosecution of a white defendant for killing two white victims in the prosecutor's use of peremptory challenges to excuse black veniremen. Although the United States Supreme Court has held that a defendant does not have to be a member of the race against whose members he alleges the discriminatory challenges are being made, the number of peremptory challenges exercised against blacks in this case does not show that the challenges were racially motivated and there was nothing in the conduct of the prosecuting attorney which shows he exercised the challenges in a racially discriminatory manner.

     **Am Jur 2d, Jury § 235.**

     **Use of peremptory challenges to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

STATE v. BEACH

[333 N.C. 733 (1993)]

2. **Evidence and Witnesses § 2299 (NCI4th)— murder — psychiatrist's testimony — cross-examination — defendant's ability to appreciate criminality of conduct — objection sustained — no prejudicial error**

There was no prejudicial error in a murder prosecution where the court sustained an objection to a defense attorney asking the State's psychiatrist on cross-examination whether defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. Evidence that a person's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law is impaired has some tendency to prove he does not know the nature and quality of his acts or the difference between right and wrong in relation thereto. However, defendant was able to elicit substantial evidence of a similar nature and there was no reasonable possibility of a different result had the error not been committed.

**Am Jur 2d, Expert and Opinion Evidence §§ 164, 176, 177, 190.**

3. **Criminal Law § 468 (NCI4th)— murder — insanity defense — closing argument — prosecutor's comment on defendant pleading not guilty — no prejudicial error**

There was no prejudicial error in a murder prosecution where the prosecutor implied in his closing argument that the defendant could have pled not guilty by reason of insanity and the State would not have had to prove all the elements of the crime. A criminal defendant may only plead not guilty, guilty or no contest, and may raise the defense of insanity if he pleads guilty by filing a pretrial motion that he intends to rely on that defense. However, despite the incorrect statement of law, there was no prejudice here because the prosecutor said that the State wanted to put on all of the evidence and, while the defendant contends that the prosecutor was allowed to argue that defendant's attorneys had misled the jury and were not to be trusted, the jury was not misled.

**Am Jur 2d, Trial §§ 275 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing two consecutive sentences of life imprisonment entered by John, J., at the 16 September 1991 regular Criminal

STATE v. BEACH

[333 N.C. 733 (1993)]

Session of Superior Court, Guilford County, upon jury verdicts of guilty of two first degree murders. The defendant's motion to bypass the Court of Appeals as to additional judgments was allowed by the Supreme Court 18 August 1992. Heard in the Supreme Court 15 March 1993.

The defendant, a white male, was tried for his life for the first degree murders of two white females, Cara Lee Cross Bennett and Mary A. Strickland. He was found guilty on the two first degree murder charges. The jury did not reach a verdict at the sentencing phase of the trial and the defendant was sentenced to consecutive life sentences on the convictions of murder. The defendant was also tried and convicted of the following: first degree rape and sentenced to a consecutive term of life imprisonment; first degree sexual offense and sentenced to a consecutive term of life imprisonment; first degree kidnapping and sentenced to a consecutive term of forty years imprisonment; felony larceny and sentenced to a consecutive term of ten years imprisonment; felony possession of stolen property and sentenced to a consecutive term of ten years imprisonment; non-felonious larceny, non-felonious possession of stolen goods, felony breaking or entering and larceny, and was sentenced to a consecutive term of ten years imprisonment; felony possession of burglary tools and sentenced to a consecutive term of ten years imprisonment.

The evidence showed that the body of Cara Lee Cross Bennett was found in her apartment at approximately 6:00 p.m. on 5 April 1989. Her arms were tied to her legs. When the officers came to investigate the murder of Ms. Bennett, they found the body of Mary A. Strickland in an upstairs apartment in the same building. A piece of cable was wrapped around her neck and a knife was lodged in her side. There was substantial evidence that the defendant had killed both the victims and was guilty of the other crimes for which he was charged.

The defendant relied on insanity as a defense. The defendant appealed from the sentences imposed.

*Michael F. Easley, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Wallace C. Harrelson, Public Defender, Walter L. Jones, Assistant Public Defender, and W. David Lloyd for defendant-appellant.*

**STATE v. BEACH**

[333 N.C. 733 (1993)]

WEBB, Justice.

**[1]** The defendant first contends there is reversible error because the State exercised its peremptory challenges to remove persons from the jury only because they were black. In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), the United States Supreme Court overruled *Swain v. Alabama*, 380 U.S. 202, 13 L. Ed. 2d 759, *rehearing denied*, 381 U.S. 921, 14 L. Ed. 2d 442 (1965), and held a defendant can make a *prima facie* case of purposeful discrimination in the selection of the petit jury on evidence concerning the prosecutor's exercise of peremptory challenges. The Court said:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson v. Kentucky*, 476 U.S. 79, 96, 90 L. Ed. 2d 69, 87-88.

In *Powers v. Ohio*, --- U.S. ---, 113 L. Ed. 2d 411 (1991), the United States Supreme Court held that a defendant does not have to be a member of the race against whose members he alleges the discriminatory challenges are being made in order to claim prejudice because of the challenges. The defendant and the victims in this case were white. When a defendant has made a *prima facie* case of racial discrimination, the State must rebut it by showing racially neutral reasons for the exercise of peremptory challenges.

In this case, the court held that the defendant had not made a *prima facie* case that the State's peremptory challenges were racially discriminatory. The State was not required to make a showing that its peremptory challenges were racially neutral. The question posed by this assignment of error is whether the court was correct in this holding.

The first twelve prospective jurors placed in the box consisted of eight blacks and four whites. One black juror and two white

STATE v. BEACH

[333 N.C. 733 (1993)]

jurors were excused for cause. The State then exercised peremptory challenges to three black jurors and one white juror. This left five potential jurors, four of whom were black and one of whom was white. The next seven persons who were placed in the box consisted of four blacks and three whites. Two of the blacks and one white said they would not impose the death penalty and were excused for cause. One of the white jurors was excused for cause after she said she could not give the defendant a fair trial if he used insanity as a defense. The State then exercised a peremptory challenge to the two black potential jurors.

Six additional persons were then put in the box. Three of them were white, two were black and one was of Asian ancestry. One prospective black juror and one prospective white juror were excused for cause after they said they could not impose the death penalty. One prospective white juror was excused for cause after he said he could not give the defendant a fair trial. The Asian juror was excused for cause after she said she might not be able to understand the judge's charge because she was not fluent in the English language. One black prospective juror was challenged peremptorily by the State. The State passed one white juror.

Five more persons were then put in the box. All of them were white. The State passed on all five and tendered the jury to the defendant. At that point, the jury consisted of eight white persons and four black persons.

The court allowed the defendant's challenges for cause to one black prospective juror and one white prospective juror. The defendant then exercised peremptory challenges to five of the proposed jurors, including two of the four black jurors who had been passed by the State. This left four white jurors and one black juror.

The jury was then returned to the State and seven more prospective jurors were put in the box. Four of them were black and three were white. Three of the black jurors and two of the white jurors were excused for cause after being challenged by the State. This left seven jurors in the box, five of whom were white and two of whom were black.

Five additional prospective jurors were then put in the box of whom one was black and four were white. The black prospective juror and three of the white prospective jurors were challenged for cause by the State. These challenges were allowed.

STATE v. BEACH

[333 N.C. 733 (1993)]

Four prospective jurors were then put in the box of whom two were black and two were white. The two black jurors and one of the white prospective jurors were then excused for cause on motion of the State.

Three prospective jurors were then put in the box of whom two were white and one was black. One of the white jurors was excused for cause on motion of the State and the State exercised a peremptory challenge to the black prospective juror. Two prospective white jurors were put in the box and both were excused for cause.

Two white prospective jurors were then put in the box. One was excused for cause. The other was passed by the State. A white prospective juror was then put in the box and passed by the State.

The jury, then composed of ten white persons and two black persons, was returned to the defendant. The defendant challenged one white proposed juror for cause, which was allowed, and exercised peremptory challenges to three white jurors. He passed the remainder of the panel consisting of six white and two black persons.

The jury was returned to the State and four proposed jurors were put in the box. All of them were white. Two of the four were excused for cause and two persons were put in the box to replace them. One of these persons was white and one was black. Both of them were excused for cause and the State accepted the other two persons as jurors.

At this point, the jury was returned to the defendant to examine the two persons in the box who had not previously been examined by the defendant. The defendant exercised a peremptory challenge as to one of them and passed the other person. The jury was returned to the State.

Three potential jurors were put in the box one of whom was black and two of whom were white. The State exercised peremptory challenges to the black and one of the white persons. Two white persons were then put in the box. The State exercised a peremptory challenge to one of them. A white person was then put in the box and the State accepted him as a juror. The jury, which was then composed of ten white persons and two black persons was returned to the defendant. The court allowed the

defendant's challenge for cause to three white potential jurors and the jury was returned to the State.

Three white persons were put in the box. One of them was excused for cause and was replaced by a white person. This person was excused for cause and replaced by a black person. The State exercised a peremptory challenge to this person. Four more white persons were put consecutively in this seat and were excused for cause. A white person was then put in the seat and was accepted by the State. The jury was then passed to the defendant.

The defendant then exercised peremptory challenges as to two of the proposed white jurors and returned the jury to the State. The State accepted two proposed white jurors and returned the jury to the defendant. Both of them were excused for cause and the jury was returned to the State.

Two white jurors were placed in the box and one of them was excused for cause. His replacement, who was white, was excused for cause. Another white juror was put in the box and accepted by the State. The jury was then returned to the defendant. The defendant peremptorily challenged the two white jurors.

Two white jurors were put in the box and one was excused for cause. He was replaced by a white. The State accepted these two jurors and returned the jury to the defendant. The defendant then accepted the jury. The jury which decided defendant's case consisted of ten white persons and two black persons.

Four alternate jurors were seated. In the course of the selection process for alternate jurors, there were six white and three black veniremen who were not excused for cause. Of the six whites, the State peremptorily excused two and passed four. Of the three blacks, the State peremptorily challenged one and passed two. The defendant exercised peremptory challenges against one white and one black veniremen. Three white jurors and one black juror served as alternates. We have recounted the jury selection process in some detail in order to show the pattern of strikes by the State.

The defendant argues that the disparate treatment of the veniremen raises an inference that blacks were peremptorily challenged because of their race. He says the blacks that were accepted by the State were amenable to the prosecution and the blacks that were peremptorily challenged were of the "same levels of education, work experience and socio economic [sic] standing" as

the whites who were passed. He says a reading of the transcript shows that the questioning of some of the black veniremen who were excused was perfunctory. The defendant argues further that the number of black jurors accepted by the State should not be considered because their acceptance was cosmetic.

In a case in which one of the methods the defendant uses in an attempt to show discrimination is the pattern of strikes, we cannot ignore the number of black jurors accepted by the State. We believe it is particularly significant that of the first twelve veniremen submitted to the defendant, four were black. The number of blacks who sat on the jury was reduced to two because of challenges by the defendant. This does not show discrimination by the State.

There is no question the State exercised more peremptory challenges against blacks than against whites. Of the thirteen black jurors who were not challenged for cause, the State exercised peremptory challenges to nine or seventy percent. With the inclusion of the alternate jurors, there were sixteen blacks who were not challenged for cause. The State exercised peremptory challenges to ten or sixty-three percent of them. We cannot say that this alone shows the peremptory challenges were racially motivated. In *State v. Abbott*, 320 N.C. 475, 358 S.E.2d 365 (1987), the State peremptorily challenged three of the four or seventy-five percent of the black jurors who were not challenged for cause and we held this did not show discrimination. In *State v. Allen*, 323 N.C. 208, 372 S.E.2d 855 (1988), *judgment vacated*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), the State challenged ten of the seventeen black jurors tendered to it and we held this did not make a *prima facie* case of racial discrimination.

We do not believe there is anything in the conduct of the prosecuting attorney which shows he exercised peremptory challenges in a racially discriminatory manner. We have read the portion of the transcript which the defendant says shows the questions by the prosecuting attorney show a perfunctory examination of the jurors by the State before the peremptory challenges to the blacks were made. As we read the transcript, the prosecuting attorney conducted an evenhanded examination of the veniremen which was designed to elicit information as to whether the veniremen could give the State and the defendant a fair trial.

We also note that the defendant and the victims were white. After considering the above factors, we cannot hold that the superior court was in error in holding that the plaintiff did not make a *prima facie* case of racial discrimination in the selection of the jury. *State v. Smith*, 328 N.C. 99, 400 S.E.2d 712 (1991); *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

[2]  The defendant next assigns error to the sustaining of an objection to a question asked by the defendant's attorney on cross-examination. Two witnesses, who qualified as experts, testified for the defendant to the effect that he was insane at the time of the two killings. The State called as a witness Dr. James Groce, a psychiatrist who had treated the defendant at Dorothea Dix Hospital pursuant to a court order. Dr. Groce testified that in his opinion, the defendant at the time of the killings knew the nature and quality of his acts and the difference between right and wrong in relation thereto.

On cross-examination, the defendant's attorney asked Dr. Groce, "is it your opinion that at the time Mr. Beach committed these crimes, his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired?" The court sustained an objection to this question. The record shows Dr. Groce would have answered in the affirmative if the objection had not been sustained.

It was error not to allow Dr. Groce to answer this question. N.C.G.S. § 8C-1, Rule 611(b) provides, "[a] witness may be cross-examined on any matter relevant to any issue in the case[.]" N.C.G.S. § 8C-1, Rule 401 says, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that a person's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law is impaired has some tendency to prove he does not know the nature and quality of his acts or the difference between right and wrong in relation thereto, which is the definition of insanity. *State v. Evangelista*, 319 N.C. 152, 161, 353 S.E.2d 375, 382 (1987).

The question then becomes whether this error was prejudicial. The defendant was able to introduce evidence through Dr. Groce's testimony on cross-examination that the defendant had a serious

STATE v. BEACH

[333 N.C. 733 (1993)]

mental illness for a substantial amount of time before the killings. Dr. Groce did not dispute the testimony of the defendant's expert witnesses that the defendant suffered from a major depression with psychotic features, and that at the time of the killings he was under the influence of a mental or emotional disturbance including a gender identity problem. The defendant was able to show through the cross-examination of Dr. Groce that the defendant may have thought he was killing his foster mother when he was killing each of the victims.

The excluded testimony that the defendant wanted to elicit from Dr. Groce was for the purpose of getting Dr. Groce to "admit that although he felt Mr. Beach could distinguish between right and wrong, that ability was still impaired due to his mental illness and that even though he knew the nature and quality of his acts, his capacity to appreciate their criminality was impaired." Although this relevant testimony was excluded, the defendant was able to elicit substantial evidence of a similar nature, as shown above, which tended to negate the defendant's capacity to understand the nature of his acts and the difference between right and wrong in relation thereto. We hold that there is not a reasonable possibility that, had the error not been committed in excluding this cumulative evidence, there would have been a different result. N.C.G.S. § 15A-1443(a) (1988). This was harmless error.

[3] The defendant next assigns error to the trial court's failure to sustain his objection to the prosecutor's argument that the defendant could have pled not guilty by reason of insanity.

During closing arguments, the district attorney argued as follows:

> Ladies and Gentlemen, let's talk about two seconds about how up front the defense lawyers are with you, and things like that, because one thing they said, "We wanted to let you know up front that we think he did it," but I contend to you, they could have done that by pleading not guilty by reason of insanity, and leaving out that not guilty plea, but didn't do that in this case—

> MR. LLOYD:—Well, OBJECTION, Your Honor.

> MR. KIMEL:—Invited argument.

> THE COURT:—OVERRULED. Go ahead.

STATE v. BEACH

[333 N.C. 733 (1993)]

MR. KIMEL:—They pled not guilty, and they pled not guilty by reason of insanity, like the Judge told you, and since they pled not guilty, we had to, as we wanted to do in this case—we wanted to do in this case—we had to put on this physical evidence; we had to put on the statements; we had to put on all the things we found in those apartments, every single one of them that linked this defendant to this crime—every one of them—and we wanted to put on all that evidence because, I contend to you, under this evidence, he's guilty of two counts of first degree murder; he's guilty of kidnaping [sic]; he's guilty of rape; he's guilty of sexual offense; he's guilty of larceny. He's guilty of each and every one of these crimes under the evidence as we've put on.

The prosecuting attorney by this argument implied that the defendant could have pled not guilty by reason of insanity and the State would not have had to prove all the elements of the crime. This is an incorrect statement of the law. A criminal defendant may only plead not guilty, guilty or no contest. N.C.G.S. § 15A-1011 (1988). If a defendant pleads not guilty he may raise the defense of insanity by filing a pretrial motion that he intends to rely on that defense. N.C.G.S. § 15A-959 (1988); *State v. Nelson*, 316 N.C. 350, 341 S.E.2d 561 (1986).

We must determine whether allowing this incorrect statement of the law was prejudicial error. We hold that it was not. We note first that the prosecuting attorney said that although the defendant's attorneys had forced him to put on a great deal of evidence "we wanted to put on all of that evidence" in order to show that the defendant had committed several crimes. The jury should not have felt it had an extra burden because of any action by the defendant's attorneys.

The defendant contends that the prosecutor was allowed to argue that the defendant's attorneys had misled the jury and were not to be trusted. We do not believe the jury inferred so serious an accusation from the prosecutor's argument. The jury knew from the trial tactics of the defendant's attorneys that the defendant did not contest the fact that he killed the two women. We do not believe the jury was misled by this argument of the prosecuting attorney. The prosecutor's argument did not go to the truth or falsity of any evidence in the case. We cannot hold there is a reasonable possibility that had this argument not been made there

would have been a different result in the trial. *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976). This assignment of error is overruled.

NO ERROR.