STATE OF NORTH CAROLINA v. TONY ANTHONY RATLIFF

No. 273A94

(Filed 8 September 1995)

**1. Evidence and Witnesses § 2904 (NCI4th)— redirect examination—hearsay—competency to rebut cross-examination evidence**

Where a witness testified at trial that defendant had stated that he was going to kill the victim, and defense counsel impeached the witness by questioning a detective about only a portion of a sentence in the witness's out-of-court statement to the effect that defendant never threatened the victim in her presence, the State was properly allowed to rebut the inference that the witness had made inconsistent statements by having the detective read the entire sentence stating that the victim had told the witness that defendant had threatened him but defendant had never threatened him in her presence, even if such testimony was hearsay.

**Am Jur 2d, Evidence § 675; Witnesses § 1025.**

STATE v. RATLIFF

[341 N.C. 610 (1995)]

**2. Criminal Law § 465 (NCI4th)— closing argument—prosecutor's misstatement of law—no comment on defendant's failure to testify—harmless error**

In a homicide prosecution in which defense counsel stated in closing argument that the State's failure to introduce at trial defendant's pretrial statement to the police strongly suggested that it would show defendant did not have the requisite intent for first-degree murder, the prosecutor's closing argument asking why the defense "didn't have this officer come up here and read the statement" constituted a misstatement of the law because defendant's statement to the police was a self-serving declaration that was inadmissible when offered by defendant, and the trial court erred by failing to sustain defendant's objection and instruct the jury to disregard the statement. This misstatement did not constitute a comment on defendant's failure to testify and thus did not violate defendant's constitutional rights so that the "harmless beyond a reasonable doubt" standard for judging prejudicial error did not apply. The combination of the overwhelming evidence of defendant's guilt of first-degree murder and the fact that the misstatement concerned a minor evidentiary issue in the case lead to the conclusion that there is no reasonable possibility that the error affected the outcome of the trial and that it was not prejudicial.

**Am Jur 2d, Homicide § 463; Trial §§ 564, 611.**

**3. Evidence and Witnesses § 364 (NCI4th)— murder of ex-girlfriend's boyfriend—prior shooting of ex-girlfriend—admissibility to show chain of events**

Evidence of defendant's shooting of his former girlfriend at the time of their breakup and his conviction and sentence arising out of that shooting was admissible to show the chain of events that led to defendant's murder of his former girlfriend's new boyfriend just three months after their breakup and ten days after defendant's release from jail for the events surrounding their breakup.

**Am Jur 2d, Evidence §§ 341, 342, 435, 437; Federal Rules of Evidence §§ 93, 119; Trial § 526.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing life imprisonment entered by Cornelius, J., at the 4 October 1993 Criminal Session of Superior Court, Guilford County,

**STATE v. RATLIFF**

[341 N.C. 610 (1995)]

upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for first-degree burglary was allowed 17 June 1994. Heard in the Supreme Court 10 April 1995.

*Michael F. Easley, Attorney General, by Mary Jill Ledford, Assistant Attorney General, for the State.*

*John Bryson for defendant-appellant.*

FRYE, Justice.

In a capital trial, defendant was convicted by a jury of first-degree murder and first-degree burglary. Following a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial court imposed a sentence of life imprisonment for the first-degree murder conviction. Defendant was also sentenced to life imprisonment for the first-degree burglary conviction.

Defendant appeals to this Court making four assignments of error. We reject these assignments of error and uphold defendant's convictions for first-degree murder and first-degree burglary.

The State's evidence presented at trial tended to show the following facts and circumstances: Sharlene Wilson and the defendant, Tony Anthony Ratliff, were "boyfriend and girlfriend" for ten or eleven years. During this time, they lived together and had three children. Wilson and the children, as well as the defendant at one time, lived in a two-story apartment. During the time Wilson was involved with defendant, he was "somewhat" jealous. Wilson ended the relationship with defendant in April of 1992, after defendant shot her three times in the back. Wilson did not know why defendant shot her. She pressed charges against defendant for the shooting, and he served three months in jail for felonious assault.

On 9 October 1992, Wilson had another violent encounter with defendant. Wilson had been dressing in an upstairs bedroom. When she came downstairs, defendant hit her over the head with a glass vase. Wilson did not know that defendant was downstairs in the apartment at the time. After hitting her, defendant used a piece of the broken vase to cut Wilson. Her wounds to the head and neck required medical attention. Defendant told Wilson that he was "going to kill [the victim], too." Wilson pressed charges, and warrants were issued for defendant's arrest.

On 11 October 1992, Billy Ashford (Wilson's new boyfriend and the victim in this case), Wilson, her brother, and her children spent the day together. Wilson, her brother, and Ashford drank wine, beer, and liquor into the late evening. Shortly after midnight, Wilson and Ashford decided to go to bed. Ashford went upstairs while Wilson checked the downstairs windows and doors. Wilson ascertained that all the windows and doors were locked except for one window in the living room, which had a broken lock. Also present in the apartment was Wilson's brother, who had passed out on the couch, and the children, who were in their upstairs bedrooms.

Wilson was awakened later that night by noises in her bedroom. She saw Ashford on the floor and defendant standing in the bedroom holding two knives. Defendant came over to the bed and told Wilson to get up. After allowing Wilson to use the bathroom, defendant directed her downstairs and told her not to make any noise. They sat in the kitchen for fifteen to thirty minutes, and Wilson saw defendant put one of the knives away. Wilson asked if she could call an ambulance, and defendant told her "no," that he was "going to make sure he's dead." Wilson noticed that the other knife appeared to be a butcher knife from her kitchen. During the time they waited, defendant said, "I told you I was going to kill him, didn't I?" Defendant left through the front door, and Wilson woke her brother. While Wilson called the police, her brother went upstairs to check on Ashford and ascertained that he was dead. The police arrived approximately ten minutes later.

When Wilson gave a statement to the police, she stated that defendant did not have a key to the apartment and that she did not give defendant permission to enter her apartment that evening. She added that the curtain over the downstairs window was rearranged after the incident. A pathologist later determined that the victim had three stab wounds and multiple abrasions. All three stab wounds were in the chest area and had been inflicted by a knife. The victim bled to death as a result of these wounds.

Later, on the morning of 12 October 1992, defendant called the police and turned himself in. Defendant waived his rights to remain silent and to an attorney and gave a statement to the police in which he admitted killing the victim. At trial, the only contested issue was whether defendant had the requisite intent for first-degree murder.

Defendant did not testify. However, he presented evidence at trial that he had seen his sister the morning of the killings, after the police

had come to her house looking for him, and that she had encouraged him to turn himself in. Defendant also presented evidence that he was functioning within the mildly mentally retarded range and that he was very upset over the recent death of one brother from AIDS and the hospitalization of another brother who was also diagnosed with AIDS.

[1] As his first assignment of error, defendant argues that it was prejudicial error to allow the State to present an out-of-court statement made by Sharlene Wilson. We disagree.

During presentation of the State's case, Wilson testified that on 9 October 1992, defendant entered her apartment and struck her in the head with a vase as she descended her stairs. She added that defendant stated that he was "going to kill him, too," referring to Billy Ashford. The State offered this evidence to show premeditation and deliberation. The State then attempted to enter into evidence a conversation between Wilson and police detective Kim Soban for the purpose of corroborating this evidence. Defendant objected, arguing that the statement contained additional information that Wilson had not testified about and, therefore, that some of the statement was not corroborative. The trial court sustained the objection and excluded the statement.

On cross-examination of Detective Soban, defendant sought to introduce a portion of the statement into evidence for the purpose of impeaching Wilson's testimony that defendant told her that he was going to kill Ashford. The testimony was as follows:

Q. (Mr. Wannamaker, defense counsel) Detective Soban, on page 9, during the course of discussions with him [sic], you said the following words—excuse me, to Sharlene—starting here where I've marked and to the middle of the page: Tony (defendant) never threatened him (the victim) in your presence or that you— then the sentence does not end, and Sharlene responded no, not in my presence—

A. (Soban) That's correct.

Q. —is that correct?

A. Yes.

MR. WANNAMAKER: Nothing further.

The State then sought to have the entire statement placed into evidence, arguing that defendant's counsel had selectively read only a portion of the sentence and that the State should be entitled to admit the whole statement to show that Wilson's words had been taken out of context. The trial court agreed with the State, thereby overruling defendant's objection and allowing the following exchange to take place.

Q. [Mr. Lyle, prosecutor:] Detective Soban, what was the first part of that?

A. I said, did he—had—so Billy (the victim) told you that Tony (the defendant) had threatened him but Tony never threatened him in your presence.

Defendant contends that the comments of Detective Soban are double hearsay and do not fall within the hearsay exceptions. As such, defendant contends the comments are inadmissible. Even assuming *arguendo* that the comments are hearsay, they are nonetheless admissible.

This Court has held that "[w]here one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such later evidence would be incompetent or irrelevant if it had been offered initially." *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981).

In *State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994), the defendant was on trial for murder and had previously been convicted of attempted rape. On direct examination of the defendant, defendant's counsel selectively read those portions of the trial transcript that were misleading and created inferences favorable to the defendant. This Court held that it was not error to allow the prosecutor to present additional portions of the transcript, including details of the attempted rape, to clear up any misleading information. *Id.* at 335-38, 439 S.E.2d at 538; *see also State v. Garner*, 330 N.C. 273, 410 S.E.2d 861 (1991) (defendant opened the door to evidence of prior convictions for violent acts where he presented evidence that tended to show that he was level headed and that victim was violent); *State v. Small*, 301 N.C. 407, 272 S.E.2d 128 (1980) (defendant opened the door where his testimony left a false impression on the jury that could only be cleared up by allowing the State to admit otherwise inadmissible polygraph evidence).

In this case, defendant questioned the witness about only a portion of the sentence in the statement. From the part that was read aloud, the jury could infer that Wilson had made inconsistent statements, an inference that would be favorable to defendant. A full reading of the sentence, however, suggests an alternative interpretation of Wilson's answer and shows that her response was consistent with her testimony at trial. As such, the trial court did not err in admitting the remaining portion of the out-of-court statement.

[2] As defendant's second assignment of error, he argues that the trial court committed prejudicial error by allowing the State to make an incorrect statement of law in closing arguments. While we agree that the trial court erred in overruling defendant's objection to the prosecutor's arguments, we find that the error was not prejudicial.

Upon his arrest, defendant made a statement to the police. This statement was not introduced at trial. Defendant's counsel argued in closing argument that the State's failure to proffer the statement strongly suggested that the evidence was not presented because it would show defendant did not have the requisite intent for first-degree murder. Defendant now assigns error to a portion of the State's closing argument. The prosecutor argued as follows:

Now, on the other hand, what they didn't say was, if it showed, if his statement was so damaging to the State and showed that it was second-degree or less, why didn't they put it on for him?

MR. BRYSON: (defense counsel): Object.

THE COURT: Overruled.

MR. LYLE (prosecutor): Why didn't they have this officer come up here and read the statement? You ever think of that?

MR. BRYSON: Object.

Defendant contends that the State was making an improper statement of the law. We agree. Defendant's statement to the police was a self-serving declaration, and it could not be admitted into evidence if offered by defendant. *State v. Weeks*, 322 N.C. 152, 367 S.E.2d 895 (1988). Incorrect statements of law in closing arguments are improper, and upon defendant's objection, the trial judge should have instructed the jury that the State's argument was improper. The trial court's failure to sustain defendant's objection and instruct the jury to

disregard the statement was error. *State v. Beach,* 333 N.C. 733, 430 S.E.2d 248 (1993).

Defendant contends that the prosecutor's misstatement was so closely connected to defendant's right not to testify that this error violated his constitutional right to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution. Accordingly, defendant argues that this Court must determine whether this error was harmless beyond a reasonable doubt. We disagree.

The Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, forbids comment by the prosecutor on the defendant's failure to testify. *See State v. Randolph,* 312 N.C. 198, 205, 321 S.E.2d 864, 869 (1984). This right is also protected under Article I, Section 23 of the North Carolina Constitution. *State v. Castor,* 285 N.C. 286, 291, 204 S.E.2d 848, 852 (1974). In the instant case, the prosecutor was directly responding to the argument made by defendant relating to a specific piece of evidence. The argument did not relate to whether defendant himself sought to testify. As such, it simply constituted a misstatement regarding the parties' relative rights to introduce the statement, not a comment on defendant's failure to testify.

Because the error does not rise to the level of a violation of defendant's constitutional rights, this Court need not examine the error under a "harmless beyond a reasonable doubt" standard. Instead, in order to award defendant a new trial, we must find that

> there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . . The burden of showing such prejudice . . . is upon the defendant.

N.C.G.S. § 15A-1443(a) (1988); *see also State v. Harris,* 290 N.C. 681, 228 S.E.2d 437 (1976) (holding that prosecutorial misstatements of the law will not be the basis of a new trial unless the defendant shows the error was material and prejudicial).

The State contends that to the extent that the prosecutor's argument misstated the law, there is no reasonable possibility, in light of the overwhelming evidence showing defendant's guilt of first-degree murder, that had the argument not been made the jury would have acquitted defendant of the crime of first-degree murder. We agree.

The State presented substantial evidence that defendant had the intent necessary for first-degree murder. First, defendant made three damaging comments to Wilson. Three days prior to the murder, he stated his intent to kill the victim. The night of the murder, he would not let Wilson call an ambulance, stating that he wanted to make sure the victim was dead. Defendant also reminded Wilson on the night of the murder that he had stated earlier that he would kill the victim. The circumstances of the crime also strongly suggest premeditation. Defendant entered Wilson's apartment through a broken window, went to the kitchen and got a knife, and then proceeded upstairs, where he attacked the victim as he slept. Also, the prosecutor's misstatement went to a minor evidentiary issue in the case and not to the truth or falsity of any evidence in the case or the validity of the law under which defendant was being prosecuted. The combination of the overwhelming evidence against defendant and the nature of the error leads this Court to conclude there is no reasonable possibility that the error affected the outcome in this case. Thus, we find the error nonprejudicial.

**[3]** Defendant's third and fourth assignments of error relate to defendant's April 1992 assault of Wilson. Defendant contends that the trial court committed prejudicial error by allowing the State to introduce evidence that defendant had previously shot Sharlene Wilson, as well as by allowing the State to present evidence of defendant's conviction and sentence arising out of the shooting of Wilson. Defendant argues that the evidence was inadmissible because it could have only been used as character evidence. We disagree.

Evidence of another offense or prior bad act "is admissible so long as it is relevant to show any other fact or issue other than the character of the accused." *State v. Weaver*, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986). This Court has held that prior bad acts are admissible to show a chain of events. *State v. Agee*, 326 N.C. 542, 391 S.E.2d 171 (1990). In *Agee*, we said that

> "[e]vidence, not a part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstance with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."

*Id.* at 548, 391 S.E.2d at 174 (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)). In the instant case, defendant killed

his ex-girlfriend's new boyfriend, just three months after their breakup and ten days after defendant's release from jail for the events surrounding their breakup. The circumstances behind the dissolution of defendant's relationship with Wilson created a complete picture for the jury. They provided a "backdrop" for defendant's jealousy and anger toward Wilson and the victim.

Just as the facts surrounding the shooting of Wilson were used to show the chain of events that led to this crime, defendant's subsequent conviction and sentence also illustrate the events preceding the murder of the victim. Thus, we reject defendant's third and fourth assignments of error.

For the foregoing reasons, we find no prejudicial error in defendant's trial.

NO ERROR.