Chief Justice MARTIN
dissenting.
Defendant entered her neighbors’ home early one morning and repeatedly stabbed one person, who lived, and another person, who died. At trial, a jury rejected defendant’s insanity defense and convicted her of first-degree murder and other offenses. The majority grants defendant a new trial because it misreads a statement by the prosecutor that actually had no prejudicial effect. And the concurring opinion adds to the confusion by injecting a legal concept (preventing prosecutors from leading the jury away from the evidence and appealing to its passions) that has little or no bearing on this case.
When the prosecutor made the statement at issue here during his closing argument, he was discussing what could happen if the jury found defendant not guilty by reason of insanity. The prosecutor said: “And it is very possible that in 50 days, if she shows by a preponderance of the evidence that she is not a threat to anyone else or herself, she will be back home. . . . She very well could be back home in less than two months.”[1] This statement was nearly correct, but it did slightly misstate the law. When a defendant who has allegedly inflicted or attempted to inflict serious physical injury or death is found not guilty by reason of insanity, state law requires that she be committed to civil confinement, see N.C.G.S. § 15A-1321(b) (2015), and that, once committed, the now-respondent will have a hearing within fifty days, id. § 122C-268.1(a) (2015). At this hearing, if the respondent proves by a preponderance of the evidence that (1) she “no longer has a mental illness” or (2) she “is no longer dangerous to others,” the court “shall order the respondent *325 discharged and released.” Id. § 122C-268.1(i) (2015). So one way for a respondent to be released from civil confinement is to show that she is no longer dangerous to others. Had the prosecutor merely said that, it would have been a correct statement of law. But the addition of the words “or herself’ made his statement incorrect. A respondent in a civil commitment hearing does not have to prove that she is not dangerous to herself—only that she is not dangerous to others. Because “[ijncorrect statements of law in closing arguments are improper,” State v. Ratliff, 341 N.C. 610, 616, 461 S.E.2d 325, 328 (1995), the prosecutor’s statement was improper.
The trial court’s decision not to sustain defendant’s objection to this statement, however, is reversible only if the statement was prejudicial. See id. at 616-18, 461 S.E.2d at 328-29. Prejudice exists when a statement creates “a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial .... The burden of showing such prejudice ... is upon the defendant.” Id. at 617, 461 S.E.2d at 329 (alterations in original) (quoting N.C.G.S. § 15A-1443(a) (1988), which has not been amended since then). The statement that the prosecutor made here was not prejudicial at all, for two reasons.
First, the prosecutor’s statement was nearly accurate, and to the extent that it was inaccurate, the inaccuracy cut against the very argument that the prosecutor was making. The prosecutor was trying to argue that defendant could be free within fifty days after being acquitted by reason of insanity, if she proved by a preponderance of the evidence that she was no longer dangerous to others (which, by law, is true). The prosecutor’s only error was to add an extra hurdle for defendant to prove, which made it sound to the jury like she had to prove more than she really did. Because this error could only have hurt the prosecutor’s argument, there is not a reasonable possibility that, in the error’s absence, the trial would have resulted in something other than a guilty verdict.
Second, we have repeatedly held, “as a general rule, [that] a trial court cures any prejudice resulting from a prosecutor’s misstatements of law by giving a proper instruction” about that area of the law “to the jury.” State v. Goss, 361 N.C. 610, 626, 651 S.E.2d 867, 877 (2007) (citing State v. Trull, 349 N.C. 428, 452, 509 S.E.2d 178, 194 (1998), cert. denied, 528 U.S. 835 (1999)), cert. denied, 555 U.S. 835 (2008); see also, e.g., State v. Buckner, 342 N.C. 198, 238, 464 S.E.2d 414, 437 (1995); State v. Harris, 290 N.C. 681, 695-96, 228 S.E.2d 437, 445 (1976). In this case, the trial court followed the pattern jury instruction and instructed the jury as follows:
*326 The defendant found not guilty by reason of insanity shall immediately be committed to a State mental facility. After the defendant has been automatically committed, the defendant shall be provided a hearing within 50 days. At this hearing the defendant shall have the burden of proving by a preponderance of the evidence that the defendant no longer has a mental illness or is no longer dangerous to others. If the [hearing] court is so satisfied, it shall order the defendant discharged and released.
Thus, the trial court correctly instructed the jury about what defendant would have to prove at her civil commitment hearing if the jury found her not guilty by reason of insanity. So even if the prosecutor’s minor misstatement of law about what defendant would have had to show at her hearing had been at all harmful to her (which, as I have shown, it was not), it would have been cured by the trial court’s proper jury instruction.
Based on these two reasons, this Court should reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for further proceedings. But by misreading the prosecutor’s statement, the majority is effectively analyzing the facts of a case that does not exist.
First of all, when framing the issue in this case, the majority refers to “the prosecutor’s closing arguments exaggerating a defendant’s likelihood of being released from civil confinement” after being acquitted by reason of insanity. Later in its opinion, it refers to “[t]he prosecutor’s arguments exaggerating the likelihood of defendant’s release if found not guilty by reason of insanity.” The majority thus seems to interpret the phrase “very possible” to mean something like “probable” or “likely.” But this misunderstands what the phrase means. Black’s Law Dictionary defines “possibility” as “[t]he quality, state, or condition of being conceivable in theory or in practice.” Possibility, Black’s Law Dictionary (10th ed. 2014). And the word “very” is simply a word of emphasis; when combined with “possible,” it is essentially a synonym of “actually,” as in “actually possible” or “very well could be.”[2] Nowhere does the prosecutor say that anything is “probable” or “likely.”[3]
*327 That gets to an even more basic problem with the majority’s reading of the prosecutor’s statement: it incorrectly identifies what the prosecutor said was “very possible.” The majority paraphrases the prosecutor as saying that, “if defendant was found not guilty by reason of insanity, it is ‘very possible’ that defendant would be released in fifty days,” and that “it is ‘very possible’ that defendant will be able to show by a preponderance of the evidence in fifty days that she is no longer dangerous to others.” (Emphases added.) But as it is plain to see, the prosecutor actually said nothing about the likelihood that defendant would win her hearing. He merely said that she would win her hearing if she proved her case. And except in the one particular that I have already discussed, the statement of law that followed the words “very possible that” was not only possible, but certain.[4] To the extent that this statement was improper, it was because the prosecutor got the law wrong, not because he said anything at all about the likelihood of defendant’s release.
Given the certainty of the statute (“shall order the respondent. . . released,” N.C.G.S. § 122C-268.1(i)), one might wonder why the prosecutor would have limited his statement of law with the words “very possible.” On the record before us, the most likely reason for his use of those words is that he was responding to the trial judge’s instruction at the charge conference. During that conference, when the prosecutor asked whether he could comment on the commitment procedures that follow a verdict of not guilty by reason of insanity,[5] the trial judge said, “Okay.” But he then instructed the prosecutor, “Just be careful what you say is all I’m saying. Be cautious about it.” By hedging his statement with the words “very possible,” the prosecutor appears to have been trying to heed what the trial judge said.
Once one recognizes where the majority has gone wrong, it becomes clear why the majority mistakenly asks whether the prosecution’s *328 (slightly inaccurate) statement of law is a reasonable inference from the evidence presented at trial—namely, because the majority has misunderstood what the prosecutor said. The prosecutor’s statement did not draw any inference from the evidence; setting aside the words “or herself,” the prosecutor made a statement of law that could be made about any defendant found not guilty by reason of insanity.
Proceeding from the premise that the prosecutor said something he did not say, the majority comments that “the only reasonable inference to be drawn from the evidence presented at trial is that it is highly unlikely that defendant would be able to demonstrate by a preponderance of the evidence within fifty days that she is no longer dangerous to others.” Even this conclusion is likely mistaken. There are arguably no reasonable inferences that could be drawn from the evidence produced at trial about the results of defendant’s future civil commitment hearing. The body of evidence produced at the two proceedings may not be—indeed, likely will not be—very similar. For instance, the majority discusses the testimony of Dr. Corvin, one of defendant’s experts. But defendant would not have to tender Dr. Corvin as an expert in a future hearing. She could retain a new expert to evaluate her condition, who might reach different conclusions from Dr. Corvin. In fact, because defendant’s goal at her civil commitment hearing would be to show that she was not insane, or at least that she was no longer dangerous to others in spite of her insanity, she would likely seek to offer different evidence at her hearing than she did at her trial. To be sure, it is concerning when either a defendant or the State engages in speculation as to the outcome of a future hearing, as the majority (incorrectly) accuses the State of doing in this case—and I fear that Hammonds instructions may invite this behavior.
The concurring opinion, meanwhile, does not accuse the prosecutor of speculation. Under its logic, though, a defendant can request and receive a Hammonds instruction, but the prosecutor cannot discuss that instruction in his closing statement. That ruling would prohibit the prosecutor from arguing the whole case—the law as well as the facts— even though he is legally entitled to do so. See N.C.G.S. § 7A-97 (2015) (“In jury trials the whole case as well of law as of fact may be argued to the jury.”). Ironically, the concurrence does not seem to be concerned when the defense counsel argues the whole case, including the Hammonds instruction, which defense counsel did here. What is good for the goose should be good for the gander.
Finally, the majority wrongly invokes the Court of Appeals’ decision in State v. Millsaps, 169 N.C. App. 340, 610 S.E.2d 437 (2005), to support *329 its argument. The prosecutor’s statement during his closing argument in Millsaps could hardly be more different from the prosecutor’s statement here. In Millsaps, the prosecutor said that “it’s 99 percent certain that [a] [j]udge someday can and will say that, oh that conviction was six or eight or ten years ago, that’s irrelevant, release him.” Id. at 345, 610 S.E.2d at 441. That statement forecast a very high likelihood of release as the result of a hearing many years in the future. Here, by contrast, the prosecutor did not predict defendant’s likelihood of release at all. Saying that it is very possible a defendant will be released if she proves her case is not comparable to saying that it is nearly certain a defendant will be released in six to ten years without any conditions attached. One statement is a comment on what the law purportedly requires; the other is a prediction about the outcome of a future proceeding.
Both the majority opinion and the concurring opinion have inadvertently distorted this case. The majority has created imaginary facts, while the concurrence has reimagined the law. In reality, the statement that defendant challenges was not prejudicial. I respectfully dissent.
Justice NEWBY joins in this dissenting opinion.

. As can be seen in the majority’s quotation from the record, in the language omitted by the ellipsis, defense counsel made an objection that the trial court overruled. Defendant did not object to the portion of the statement that the prosecutor made after the ellipsis. Both defendant and the majority maintain that the objection should carry over to that portion for the purposes of the standard of review. I am inclined to agree, but it follows that the statement needs to be reviewed as a whole.

. Indeed, the prosecutor followed up his “very possible” statement with the statement that defendant “very well could be back home in less than two months” if she could prove her case.

. The concurring opinion claims that the prosecutor’s statement “implied that... a finding [resulting in release from civil confinement in 60 days] was routine.” But I see no basis for this inference, and the concurrence does not provide any.

. The concurring opinion says that “it is inappropriately inflammatory for a prosecutor to speculate about the possibility that a defendant who was found not guilty by reason of insanity could be released after a short period of time.” Of course, if what the prosecutor said was an inflammatory “appeal] ] to [the] jury’s passions,” State v. Jones, 355 N.C. 117, 129, 558 S.E.2d 97, 105 (2002), then the pattern jury instruction about insanity verdicts, and indeed the law itself in this area, is inflammatory as well.

. Under this Court’s holding in State v. Hammonds, when a defendant requests an instruction on the commitment procedure and proceedings that follow a verdict of not guilty by reason of insanity, and has presented evidence to support that verdict, the trial court must provide the appropriate instruction. 290 N.C. 1,15, 224 S.E.2d 595, 604 (1976). Defendant did so here, and the trial court complied with Hammonds by agreeing to issue and then properly issuing the instruction.