BEASLEY, Justice.
We consider whether the Court of Appeals erred in holding that the prosecutor’s closing arguments exaggerating a defendant’s likelihood of being released from civil commitment upon a finding of not guilty by reason of insanity constituted prejudicial error. We hold that the statements at issue were improper and prejudicial. Accordingly, we affirm the decision of the Court of Appeals granting defendant a new trial.
Melissa Amber Dalton (defendant) has along history of substance abuse and mental illness, including bipolar disorder and borderline personality disorder. On or about 29 July 2009, defendant received inpatient treatment for mental health and addiction issues at the Neil Dobbins Center, a crisis treatment facility. At that time Daniel Johnson, M.D. diagnosed defendant with cocaine dependence, cannabis abuse and substance induced mood disorder, borderline personality disorder, and intrauterine pregnancy. Dr. Johnson prescribed Lexapro, a selective serotonin reuptake inhibitor (SSRI). Unbeknownst to Dr. Johnson, defendant had previously reacted negatively to another *313 SSRI, Prozac. Defendant was discharged from the facility approximately three days later.
After defendant returned home from Neil Dobbins, she continued taking Lexapro. Defendant’s boyfriend noticed that defendant was acting unpredictably, and he removed their infant daughter from defendant’s apartment. On the night of 20 August 2009, defendant’s boyfriend called defendant’s mother and asked her to check on defendant because he noticed that defendant seemed depressed. After observing defendant’s strange behavior, defendant’s mother went to the magistrate’s office and “tried to have [defendant] committed.” The magistrate told her to speak with a social worker and return the next day. That evening defendant exchanged some electronics for a gram of crack cocaine.
Defendant lived in an apartment in Brevard, North Carolina, where Naomi Jean Barker (Barker) and Richard Holden (Holden) were her neighbors. Early in the morning of 21 August 2009, defendant knocked on Barker and Holden’s front door claiming to have money she previously borrowed from them. When Holden opened the door, defendant pushed him against the wall and stabbed him repeatedly. Defendant then approached Barker, calling her by the wrong name, and stabbed her six times. Defendant removed five dollars from Holden’s wallet and left the apartment. Barker called 911. The police arrived to find Holden dead at the scene and Barker suffering from serious injuries.
Shortly after the incident, a rescue squad member saw defendant, who was still wearing bloody clothes, trying to catch a ride at a nearby church. An officer located defendant at the church and brought her to the police station, where she was interviewed by an S.B.I. agent. When the agent recited defendant’s Miranda rights, she refused to speak further and requested an attorney.
On 5 October 2009, defendant was indicted for first-degree murder, first-degree burglary, and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant indicated her intent to plead the defense of insanity and was subsequently evaluated by David Bartholomew, M.D. regarding her capacity to proceed and her mental condition at the time of the offense.
At trial the defense offered two expert witnesses to testify as to defendant’s mental state. Wilkie Wilson, Ph.D., an expert in neurophar-macology, testified about the effects of drugs on defendant’s behavior at the time of the crime. He opined that SSRIs, such as Lexapro, should not be prescribed to people with bipolar disorder because this class of drugs *314 “can greatly disturb their mental function and push them over from a controlled state into mania.” Dr. Wilson also opined that at the time of the homicide defendant was in a manic state.
George Corvin, M.D., a psychiatrist, testified about defendant’s past history of mental illness and her state of mind at the time of the homicide. He opined that defendant’s mental illness, her negative reactions to SSRIs, and her drug use affected her mental state at the time of the homicide. Ultimately, Dr. Corvin testified that defendant was manic at the time of the homicide. He also opined that, although treatable, defendant’s mental illness cannot be cured and she will always be an addict, and added that if “[defendant] were not in treatment at all and were in a highly unstable, chaotic, abusive environment again and were to resume use of illicit substances, [then] her danger and her risk of recidivism... would go up substantially.” The State did not present any expert witnesses to testify regarding defendant’s mental condition.
At the charge conference, the prosecutor asked if he could comment on the civil commitment procedures that would apply if defendant was found not guilty by reason of insanity. The trial court agreed to permit the comment, but cautioned the prosecutor not to exaggerate defendant’s chance of being released after fifty days. During closing arguments, the prosecutor made the following statements:
[Prosecutor]: .... [Defendant] doesn’t remember, so she says you can’t hold me accountable, so find me not guilty by reason of insanity.
And that way, as one of the lawyers mentioned, then she can be committed to a hospital if you find that verdict. And it is very possible that in 50 days, if she shows by a preponderance of the evidence that she is not a threat to anyone else or herself, she will be back home.
[Defense counsel]: Objection.
THE COURT: Overruled.
[Prosecutor]: She very well could be back home in less than two months.
(Emphasis added.) The prosecutor also argued, without objection, that defendant’s request for a lawyer during the police interview was evidence of her sanity at the time of the homicide.
On 14 April 2014, the jury found defendant guilty of first-degree murder under a theory of felony murder, first-degree burglary, and assault *315 with a deadly weapon inflicting serious injury. The jury declined to find defendant not guilty by reason of insanity for all offenses. The trial court sentenced defendant to life imprisonment without parole and a consecutive term of twenty-six to forty-one months’ of imprisonment. The trial court arrested judgment on the first-degree burglary conviction.
Defendant appealed her convictions to the Court of Appeals, arguing: (1) The trial court erred in overruling her objection to the State’s argument that if she was found not guilty by reason of insanity, it was “very possible” that she could be released from civil commitment in fifty days; and (2) The trial court erred in failing to intervene ex mero motu when the State argued that her request for counsel during a police interview showed that she was sane. In a unanimous opinion filed on 15 September 2015, the Court of Appeals found prejudicial error in the prosecutor’s closing arguments regarding defendant’s likelihood of release if found not guilty by reason of insanity and held that defendant was entitled to a new trial. The Court of Appeals did not address defendant’s argument regarding invocation of her Miranda rights as evidence of sanity.
On 17-March 2016, this Court allowed the State’s petition for discretionary review on the issue of “[wjhether the Court of Appeals erred in distorting the transcript, applying an incorrect standard of review, and finding prejudicial error based upon the prosecutor’s statements in closing argument regarding the potential for defendant’s release from civil commitment if found not guilty by reason of insanity.”
 First, the State contends that the Court of Appeals applied the incorrect standard of review because the court improperly read the prosecutor’s two separate statements as one. Specifically, the State argues that the second statement should be reviewed for gross impropriety, not abuse of discretion, because defendant did not object to that statement at trial. We disagree.
When a defendant objects at trial, this Court reviews closing arguments to determine “whether the trial court abused its discretion by failing to sustain the objection.” State v. Jones, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citations omitted). In reviewing closing arguments for an abuse of discretion, this Court must “first determine [ ] if the remarks were improper.” Id. at 131, 558 S.E.2d at 106. If so, this Court must then “determine if the remarks were of such a magnitude that their inclusion prejudiced defendant, and thus should have been excluded by the trial court.” Id. at 131, 558 S.E.2d at 106 (citing Coble v. Coble, 79 N.C. 589 (1878); and State v. Tyson, 133 N.C. 692, 698, 45 S.E. 838, 840 (1903)). *316 Conversely, when a defendant fails to object at closing, this Court must determine if the argument was “so grossly improper that the trial court erred in failing to intervene ex mero motu.” State v. Barden, 366 N.C. 316, 358, 572 S.E.2d 108, 135 (2002) (quoting Slate v. Trull, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998), cert. denied, 528 U.S. 835, 145 L. Ed. 2d 80 (1999)), cert. denied, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003).
Here the issue is whether the prosecutor’s closing arguments mentioning defendant’s likelihood of release upon a finding of not guilty by reason of insanity were prejudicial. The State asserts that the prosecutor’s arguments should be reviewed as two separate and distinct statements, the first to which defense counsel objected[1] and the second to which counsel did not.[2] “[Statements made during closing arguments,” however, “will not be examined in isolation. ‘Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred.’ ” State v. Ward, 354 N.C. 231, 265, 555 S.E.2d 251, 273 (2001) (citing and quoting State v. Guevara, 349 N.C. 243, 257, 506 S.E.2d 711, 721 (1998), cert. denied, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999)). When viewed in context, especially considering the conversation that took place during the charge conference,[3] the second statement is not separate and distinct from the first. It was made immediately after the trial court overruled the defense’s objection and is a summary of the first statement.
*317 Next, the State contends that the Court of Appeals’ analysis regarding the propriety of the prosecutor’s closing arguments was flawed. Specifically, the State argues that the Court of Appeals erred in relying on State v. Millsaps, 169 N.C. App. 340, 610 S.E.2d 437 (2005), and distinguishing State v. Allen, 322 N.C. 176, 367 S.E.2d 626 (1988). We disagree.
Closing arguments must “(1) be devoid of counsel’s personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial.” Jones, 355 N.C. at 135, 558 S.E.2d at 108; see State v. Covington, 290 N.C. 313, 327-28, 226 S.E.2d 629, 640 (1976) (stating that counsel “may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case” (citations omitted)). “Improper remarks are those calculated to lead the jury astray,” such as “references to matters outside the record.” Jones, 355 N.C. at 133, 558 S.E.2d at 108. Additionally, “[i]ncorrect statements of law in closing arguments are improper.” State v. Ratliff, 341 N.C. 610, 616, 461 S.E.2d 325, 328 (1995).
Pursuant to section 15A-1321, if a jury finds a defendant not guilty by reason of insanity, the trial court must order that the defendant be civilly committed. N.C.G.S. § 15A-1321 (2015). Within fifty days of commitment, the trial court must provide the defendant with a hearing, id. § 122C-268.1(a) (2015), and if, at that time, the defendant shows “by a preponderance of the evidence” that she “(i) no longer has a mental illness” or “(ii) is no longer dangerous to others,” the court will release the defendant, id. § 122C-268.1(i) (2015). A defendant is “dangerous to others” when
within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; and that there is a reasonable probability that this conduct will be repeated. Previous episodes of dangerousness to others, when applicable, may be considered when determining reasonable probability of future dangerous conduct. Clear, cogent, and convincing evidence that an individual has committed a homicide in the relevant past is prima facie evidence of dangerousness to others.
Id. § 122C-3(ll)(b) (2015) (emphasis added).
*318 “During closing arguments, attorneys are given wide latitude to pursue their case.” State v. Prevatte, 356 N.C. 178, 237, 570 S.E.2d 440, 472 (2002) (citing State v. Scott, 343 N.C. 313, 343, 471 S.E.2d 605, 623 (1996)), cert. denied, 538 U.S. 986, 155 L. Ed. 2d 681 (2003). These arguments, however, “must be viewed in context and in light of the overall factual circumstances to which they refer.” State v. Locklear, 363 N.C. 438, 477, 681 S.E.2d 293, 320 (2009) (Brady, J., dissenting) (quoting State v. Goss, 361 N.C. 610, 626, 651 S.E.2d 867, 877 (2007), cert. denied, 555 U.S. 835, 172 L. Ed. 2d 58 (2008)). If a prosecutor’s argument regarding a defendant’s release after a finding of not guilty by reason of insanity is not supported by a reasonable inference drawn from the evidence presented at trial, then such an argument is improper. See Millsaps, 169 N.C. App. 340, 610 S.E.2d 437.
In Millsaps the defendant raised an insanity defense to first-degree murder and other related charges. Id. at 341, 610 S.E.2d at 438. Evidence presented at trial indicated that the defendant’s mental illness could be treated, but not cured, and that the defendant would probably always need to be hospitalized. Id. at 348, 610 S.E.2d at 442. During closing arguments, the prosecutor said, “We submit it’s 99 percent certain that [a judge] someday can and will say that, oh that conviction was six or eight or ten years ago, that’s irrelevant, release him.” Id. at 345, 610 S.E.2d at 441. Using an abuse of discretion standard, the court in Millsaps determined that the prosecutor’s statements constituted error because they were outside the evidence presented at trial and held that they were “impermissibly prejudicial.” Id. at 348, 610 S.E.2d at 442-43.
Here, as in Millsaps, the evidence presented at trial does not support the assertions made by the prosecutor during closing arguments. Specifically, the evidence does not support the conclusion that if defendant was found not guilty by reason of insanity, it is “very possible” that she would be released in fifty days. Instead, the evidence demonstrated that defendant will suffer from mental illness and addiction “for the rest of her life,” and that “defendant’s risk of recidivism would significantly increase if she were untreated and resumed her highly unstable lifestyle.” State v. Dalton, _ N.C. App. _, _, 776 S.E.2d 545, 551 (2015) (discussing Dr. Corvin’s testimony). The State did not present any expert evidence at trial to rebut these conclusions. Additionally, the homicide for which defendant was convicted is prima facie evidence of dangerousness to others. N.C.G.S. § 122C-3(11)(b). Therefore, the only reasonable inference to be drawn from the evidence presented at trial is that it is highly unlikely that defendant would be able to demonstrate by a preponderance of the evidence within fifty days that she is no longer dangerous to others.
*319 We rej ect the State’s contention that Millsaps is distinguishable from the facts of this case. In essence, Millsaps stands for the proposition that counsel’s argument regarding the likelihood of a defendant’s release after being found not guilty by reason of insanity must be supported by the evidence. The level of possibility or probability of release is not the salient issue; rather, it is the evidence and all reasonable inferences that can be drawn from that evidence which govern counsel’s arguments in closing. This Court’s prior decisions do not support the State’s possibility versus probability dichotomy, and we decline to recognize such a dichotomy at this time.
This Court also disagrees with the State’s argument that Allen governs the disposition of this case. In. Allen the defendant raised the defense of insanity to charges of first-degree murder and first-degree arson. 322 N.C. at 180-82,367 S.E.2d at 628-29. During closing arguments, the prosecutor contended that if the jury found the defendant not guilty by reason of insanity, then the defendant “might be released within ninety days.” Id. at 194, 367 S.E.2d at 636. This Court found that the prosecutor erred by “misstat[ing] the maximum recommitment period,” but concluded that such “misstatement did not rise to the level of prejudicial error.”[4] Id. at 195, 367 S.E.2d at 637. This Court did not, however, address whether the evidence presented at trial supported the argument. Despite the State’s contention, this Court’s silence on the issue of likelihood of release does not support a conclusion that this Court condoned the statement. Because Allen only addressed a misstatement of law made during closing arguments and not a misapplication of the facts, it is distinguishable from the instant case.
Finally, the State contends that the Court of Appeals’ analysis regarding prejudice was flawed because defendant cannot show “a reasonable possibility” that a different result would have been reached at trial had the error not been committed. See N.C.G.S. § 15A-1443(a) (2015). We disagree.
“Improper remarks may be prejudicial either because of their individual stigma or because of the general tenor of the argument as a whole.” Jones, 355 N.C. at 133, 558 S.E.2d at 108. Here the overwhelming evidence demonstrated that defendant committed the violent acts for which she was convicted and that she had a long-standing history of *320 substance abuse and mental illness. By improperly presenting to the jury that it was “very possible” that defendant would be released in fifty days, the prosecutor prejudiced defendant by persuading the jury against a finding of not guilty by reason of insanity. Therefore, a reasonable possibility exists that the jury would have found defendant not guilty by reason of insanity if the prosecutor had not made the improper remarks during closing arguments.
We hold, therefore, that the Court of Appeals correctly applied the abuse of discretion standard when reviewing the prosecutor’s closing arguments. The prosecutor’s arguments exaggerating the likelihood of defendant’s release if found not guilty by reason of insanity constituted prejudicial error because they were not supported by the evidence. For the reasons stated, we affirm the opinion of the Court of Appeals.
AFFIRMED.

. “And it is very possible that in 50 days, if she shows by a preponderance of the evidence that she is not a threat to anyone else or herself, she will be back home.”

. “She very well could be back home in less than two months.”

. The following discussion took place during the charge conference:
[Prosecutor]: Judge, I would just ask the Court to allow me in closing argument to comment on [the civil commitment instruction].
[[Image here]]
THE COURT ... I would have to limit -1 mean, if you would make a statement like, well, she’ll be out on the street in 50 days, that’s not correct according to the law, so I would have to give them an instruction to disregard that statement, to correct that statement.
[Prosecutor]: But she could be. Or she could be in five days.
THE COURT She could -
[Prosecutor]: I think these people need to know that.
THE COURT Okay. Just be careful what you say is all I’m saying. Be cautious about it.

. The closing arguments at issue in Allen were reviewed for gross impropriety. Alim, 322 N.C. at 195, 367 S.E.2d at 636-37.