An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-938

Filed 19 November 2025

Gaston County, No. 20CR058803-350

STATE OF NORTH CAROLINA

v.

VALENCIA MCLEAN

Appeal by Defendant from a judgment entered 28 November 2023 by Judge David A. Phillips in Gaston County Superior Court. Heard in the Court of Appeals 27 August 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Robert C. Ennis, for the State.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Samuel J. Ervin, IV, for the Defendant.*

WOOD, Judge.

Valencia McLean ("Defendant") appeals from judgment following a jury verdict finding her guilty of second-degree murder. On appeal, Defendant contends the trial court erred by (1) instructing the jury on the aggressor doctrine when discussing self-defense; and (2) not intervening *sua sponte* during the State's closing argument. After

careful review of the record, we conclude Defendant received a fair trial free from error.

## I.    Factual and Procedural Background

In December 2016, Defendant met Willie Breeden ("Breeden") online and by January 2017 Breeden had moved into Defendant's home with her and her son Latrelle McLean ("Latrelle"). In January 2018, Defendant gave birth to the couple's daughter.

In April 2019, Defendant was shot in the foot with Breeden's rifle. Defendant told hospital staff "it was a clear accident" when Breeden was "showing her his AR-15 and it accidentally discharged[.]" However, Breeden was arrested for felony assault. Defendant posted Breeden's bond, asked for the charges to be dismissed and went with Breeden to pick up his rifle from the police station.

After the shooting incident, the Department of Social Services removed Latrelle and his younger sister from the home and placed them in foster care based on domestic violence concerns. However, in June 2020, Latrelle turned eighteen and chose to return to his family's home.

On the evening of 12 September 2020, Defendant and Breeden began arguing about various interpersonal issues including Breeden's concerns about Defendant's fidelity. Breeden eventually fell asleep on the floor, and Defendant removed Breeden's rifle from its case under the bed in their upstairs bedroom and hid it behind the washing machine in the downstairs laundry room. At some point overnight or on

the morning of 13 September 2020, something woke everyone up, Breeden "started raising hell" and the argument between the couple became physical. Defendant reported that Breeden struck her with a shower rod and pushed her head while she pulled his hair and pushed him away. Things calmed down, Latrelle went back to sleep, and Breeden again slept on the hallway floor. Defendant began making breakfast. Sometime later Latrelle awoke to a gunshot. He found Breeden lying at the top of the stairs and Defendant crying at the bottom of the stairs holding a gun. He instructed her to put the gun on the stove and called 911.

Officer Brandon Broome ("Officer Broome") with the Gastonia Police Department and Deputy Tristan Buchanan ("Deputy Buchanan") of the Gaston County Sheriff's Office responded to the call. Breeden's body was at the top of the stairs. There was a bullet graze injury to his left forearm, a gunshot wound to his chest, and a pool of blood on the landing underneath his body. A single shell casing was found at the bottom of the stairs.

Detective David Whitlock ("Detective Whitlock") of the Gastonia Police Department interviewed Defendant at the station. Defendant had a bruise on her arm which she reported was from Breeden hitting her with a shower rod during their previous physical altercation. During the interview Defendant stated she and Breeden had argued after he awoke. She reportedly grabbed her gun and told him he needed to leave. He refused and threatened that she needed to shoot him or he would shoot her. He ran up the stairs, and she was afraid he was going for his rifle.

She again told him to leave, but he refused and sat down at the top of the stairs. She stated they continued arguing, and when he jumped up as if to come down the stairs, she shot him. She told the Detective that she found out later her son had moved the rifle downstairs. However, this was contradicted by Defendant when she called her father from jail and admitted it was she who had moved the rifle downstairs.

Defendant was indicted for first-degree murder. In November 2023, the matter came on for trial. The trial court charged the jury with instructions on first-degree murder, second-degree murder, voluntary manslaughter, and not guilty. It also instructed the jury on self-defense and the aggressor doctrine. On 28 November 2023, the jury found Defendant guilty of second-degree murder, and Defendant gave notice of appeal in open court.

## II.    Analysis

Defendant raises two issues on appeal, whether (1) the trial court plainly erred by instructing the jury on the aggressor doctrine when discussing self-defense; and (2) the trial court reversibly erred by not intervening *sua sponte* during the State's closing argument.

### A. Jury Instructions

Defendant contends the trial court erred by instructing the jury on the aggressor doctrine when there was an absence of evidentiary support for those instructions. However, Defendant acknowledges she failed to object to the instructions at trial and, therefore, failed to preserve this issue for review.

It is well settled that "the plain error standard applies in cases involving unpreserved jury instruction issues." *State v. Collington*, 375 N.C. 401, 409, 847 S.E.2d 691, 697 (2020). "As a result of defendant's failure to object to the delivery of an 'aggressor' instruction to the jury before the trial court, defendant is only entitled to argue that the delivery of the 'aggressor' instruction constituted plain error . . . ." *State v. Mumma*, 372 N.C. 226, 241, 827 S.E.2d 288, 298 (2019).

Our Supreme Court has clearly laid out a three-factor test for plain error.

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a "probable impact" on the outcome, meaning that "absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an "exceptional case" that warrants plain error review, typically by showing that the error seriously affects "the fairness, integrity or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up). "Probable impact" was further clarified when the Supreme Court stated Defendants must prove, "absent the error, the jury probably would have reached a different result." *Id.* at 160, 900 S.E.2d at 787. Furthermore, "[t]he question is not whether the challenged evidence made it more likely that the jury would reach the *same* result. Instead, the analysis is whether, without that evidence, the jury probably would have reached a *different* result." *Id.*

Prior to the Supreme Court's clarification of the plain error standard in *Reber,* it had already made clear, "we need not 'decide whether an instruction on the

aggressor doctrine was improper' given defendant's failure 'to sufficiently demonstrate that, absent instructions on the aggressor doctrine, the jury would not have rejected his claim of self-defense for other reasons.'" *State v. Mumma*, 372 N.C. 226, 241, 827 S.E.2d 288, 298 (2019) (quoting *State v. Juarez*, 369 N.C. 351, 359, 794 S.E.2d 293, 300 (2016)). The clarification of the "exacting prejudice standard required for plain error review" in *Reber* only further supports the Court's direction that we need not consider whether the trial court erred if the Defendant is not able to meet that prejudice standard. *Reber*, 386 N.C. at 160, 900 S.E.2d at 787.

Here, Defendant fails to reach the high bar set in *Reber*. Based on a thorough review of the facts presented, Defendant fails to demonstrate that absent the aggressor instructions it is "significantly more likely than not" the jury would have accepted her claims of defensive force. *Id.* at 159, 900 S.E.2d at 787; s*ee also State v. Mumma*, 372 N.C. 226, 241, 827 S.E.2d 288, 298 (2019). Although Defendant presents a compelling history of domestic abuse, the facts concerning 12-13 September 2020 do not compel a belief in defensive force. Defendant had removed and hidden Breeden's gun prior to the final confrontation culminating in the shooting. When police responded to the scene, Defendant had only one minor bruise on her arm. Police found Breeden's body and all the blood evidence located on the landing at the top of the stairs while the shell casing rested on the downstairs floor. Ballistics testing indicated that the shot had not been fired at close range. Although Latrelle noted minor physical altercations between Defendant and Breeden the night before

and awoke the first time by Breeden's early morning yelling, he awoke a second time by the gunshot, not an altercation. Further, Defendant lied to police during questioning. These facts do not support Defendant's contention that absent the aggressor instructions it is "significantly more likely than not" that the jury would have accepted her claims of defensive force.

Additionally, Defendant fails to provide any support for the third prong of the *Reber* test, that the error seriously affects "the fairness, integrity or public reputation of judicial proceedings," beyond the mere assertion that because the trial court erred it impacted fairness, integrity and reputation of judicial proceedings. *Reber*, 386 N.C. at 153, 900 S.E.2d at 786.

As Defendant fails to provide support for prejudice, we find no prejudicial error in the trial court's provision of the aggressor instruction.

**B. Closing Arguments**

Next Defendant contends the trial court erred in failing to intervene *sua sponte* during the State's closing arguments. Defendant concedes her failure to object to State's closing arguments at trial.

> The standard of review when a defendant fails to object at trial is whether the argument complained of was so grossly improper that the trial court erred in failing to intervene *ex mero motu.* "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." In determining whether the statement was

grossly improper, we must examine the context in which it
was given and the circumstances to which it refers.

*State v. Parker*, 298 N.C. App. 262, 266, 914 S.E.2d 97, 101 (2025) (citing *State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998)).  Our Supreme Court has recognized, "[t]his is an exceedingly high bar.  It applies only when the prosecutor's statements went so far beyond the 'parameters of propriety' that the trial court is forced to intervene to protect the rights of the parties and the sanctity of the proceedings."  *Reber*, 386 N.C. at 163, 900 S.E.2d at 789 (cleaned up).  Defendant asserts the State prejudiced her by misstating the law and the evidence regarding Defendant being an aggressor.

1. Misstatements of Law

"[I]ncorrect statements of law in closing arguments are improper."  *State v. Dalton*, 369 N.C. 311, 317, 794 S.E.2d 485, 489 (2016) (quoting *State v. Ratliff*, 341 N.C. 610, 616, 461 S.E.2d 325, 328 (1995)).  However, a "trial court is not required to intervene *ex mero motu* where a prosecutor makes comments during closing argument which are substantially correct shorthand summaries of the law, even if slightly slanted toward the State's perspective."  *State v. Taylor*, 362 N.C. 514, 546, 669 S.E.2d 239, 265 (2008).  Additionally, a prosecutor's misstatement of the law may be cured by the trial court's subsequent correct instructions.  *Id.*  In completing this analysis, the closing arguments "must be viewed in context and in light of the overall factual circumstances to which they refer."  *State v. Dalton*, 369 N.C. 311, 318, 794

S.E.2d 485, 490 (2016) (cleaned up).

Defendant contends the State erred in two statements of law (1) stating Defendant was "the one that brought the gun to the party, which makes her the aggressor[,]" and (2) pointing to Defendant's failure to leave the house which Defendant argues suggests that regardless of whether Defendant was an aggressor she had the duty to leave her own residence in lieu of using defensive force.

When these statements are viewed in context, it is clear the State was providing a thorough evaluation of the elements of self-defense and how the facts of this case weighed against those requirements. N.C. Gen. Stat. § 14-51.4(2) clearly states that the justification of self-defense is not available to one who "initially provokes the use of force" unless among other factors "the person using defensive force had no reasonable means to retreat[.]" N.C. Gen. Stat. § 14-51.4(2) (2024). While possessing a gun in and of itself does not necessarily meet the standard to be considered an aggressor, being the one to raise the use of force to a deadly level absolutely can. "The jury could, on this evidence, conclude that she was the first one to employ deadly force, and that when she did, she was the only one in possession of a deadly weapon." *State v. Hicks*, 385 N.C. 52, 64, 891 S.E.2d 235, 244 (2023).

The State's summary of the law and its application to the facts was expansive and explained various factors the jury could consider. This included, taken in the light most favorable to the State, that as the only person wielding a deadly weapon, Defendant was an aggressor and therefore had an obligation to retreat before using

deadly force. This does not reach the level of gross impropriety required to find error but more closely reflects "substantially correct shorthand summaries of the law" which were slanted toward the State's perspective. *Taylor*, 362 N.C. at 546, 669 S.E.2d at 265.

Even assuming *arguendo* any error occurred, the trial court clearly instructed on all the matters raised in the State's argument including self-defense, duty to retreat, aggressor doctrine, and excessive force without Defendant objecting. Any misstatement or confusion of law caused by the State's arguments would have been cured by the trial court's instruction. *Id.*

2. Misstatements of Fact

Defendant argues the State made three misstatements of fact during closing arguments, (1) the prosecutor said Breeden didn't say "either you do me or I do you" until after Defendant retrieved her gun; (2) the prosecutor argued Defendant admitted Breeden "was sitting at the top of the stairs when she shot him[;]" and (3) the prosecutor said according to the pathologist the gunshot entered at a "slight upward angle" when in fact the testimony was "slightly downward." These arguments fail for two reasons.

First, a thorough review of the record reveals both the first and second statements are supported by the evidence and testimony. "It is proper for a prosecutor during closing argument to describe testimony or other evidence that was introduced during the trial." *Reber*, 386 N.C. at 164, 900 S.E.2d at 790. In her initial

interview admitted into evidence, Defendant stated, "That's when I, you know, grabbed my gun. And, um, at that point he was like, you know, do me, I'm gonna do you." Then during cross-examination Defendant testified,

> State: It was from that point, with him at the top of the stairs and you at the bottom, you shot him, correct?
>
> Defendant: I wasn't all the way at the bottom.
>
> State: Were [you] up on that landing, two steps up on the landing?
>
> Defendant: I was about three steps up.
>
> State: Three steps up. You were continuing to pursue him upstairs while you were armed and he was not?
>
> Defendant: I wasn't pursuing. I stopped. I stopped where I was at.
>
> State: But he was sitting at the top of the stairs and you were two or three steps up when you shot him?
>
> Defendant: Yes.

Defendants' own statements clearly support the State's assertions during closing arguments. The fact Defendant's statements changed throughout the pendency of the case does not preclude the State from describing the evidence during closing remarks. When evidence is introduced without objection at trial and does not meet the criteria for plain error, it is well within the "parameters of propriety" for a trial court to permit that evidence to be described in closing arguments. *Reber*, 386 at 164, 900 S.E.2d at 790.

Finally, the State concedes the prosecutor's statement regarding the trajectory of the bullet included a *lapsus linguae* or slip of the tongue. The prosecutor was making an argument that the trajectory of the bullet indicated Breeden was sitting at the time of the shooting as opposed to standing, reinforcing the idea that he was not the aggressor.

> [I]f she is standing up at the top of the stairwell and she raises her arm to shoot, that bullet is going to go low to high. That is basic angle, but it didn't. It was a slight *upward* angle. Why? Because he was sitting at the top of those stairs, maybe with his hands up leaning a little forward, but he was sitting at the top of those stairs. He was not standing there. Why does that matter? Because she has to be in imminent fear of death or great bodily harm, and he was just sitting there with no gun when she shot him.

(emphasis added). During trial the forensic pathologist, Dr. James Sullivan ("Dr. Sullivan"), testified the bullet path was very slightly *downward* and to the right. Therefore, the prosecutor's use of upward instead of downward was incorrect and error. However, it clearly appears to be a slip of the tongue as a downward trajectory supported the prosecutor's argument and there is no evidence that he would have chosen to or intentionally argued otherwise. Additionally, prior to closing arguments the trial court instructed the jury that "arguments of the lawyers are not evidence" and if its "recollection of the evidence differs from that of the lawyer," the jury is "to be guided exclusively by your own recollection of the evidence." Following closing arguments and during jury instructions, the trial court stated, "[i]f your recollection

- 12 -

of the evidence differs from that of the attorneys, you are to rely solely upon your recollection[.]" Therefore, once again, any misstatement or confusion of law caused by the State's arguments would have been cured by the trial court's instruction. *State v. Taylor*, 362 N.C. at 546, 669 S.E.2d at 265.

Regardless, a single misstatement concerning a minor factual issue within the entirety of the State's closing argument cannot reach the "exceedingly high bar" of statements "so far beyond the 'parameters of propriety'" as to be error for the trial court not to intervene. *Reber*, 386 N.C. at 163, 900 S.E.2d at 789.

We hold the trial court did not err by failing to intervene *sua sponte* during the State's closing arguments

## III. Conclusion

For the foregoing reasons, we conclude the trial court did not prejudicially err in its instruction to the jury nor was it required to intervene *sua sponte* during the State's closing arguments. Defendant received a fair trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judges ZACHARY and STADING concur.

Report per Rule 30(e).