IN THE SUPREME COURT OF NORTH CAROLINA

No. 94PA16

Filed 8 December 2017

STATE OF NORTH CAROLINA

v.

HAROLD LAMONT FLETCHER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 782 S.E.2d 926 (2016), finding no error at trial after appeal from judgments entered on 23 May 2014 by Judge Phyllis M. Gorham in Superior Court, New Hanover County. Heard in the Supreme Court on 13 February 2017.

*Joshua H. Stein, Attorney General, by Laura E. Crumpler, Special Deputy Attorney General, for the State.*

*Glenn Gerding, Appellate Defender, by James R. Grant, Assistant Appellate Defender, for defendant-appellant.*

ERVIN, Justice.

The issues before us in this case include whether the trial court abused its discretion by overruling defendant's objection to alleged misstatements of law contained in the prosecutor's final argument to the jury and whether the trial court erroneously denied defendant's request that the jury be instructed that the "oral intercourse" element of first-degree sexual exploitation of a minor involves "penetration, however slight." We hold that the challenged prosecutorial argument,

while erroneous, was not prejudicial and that the trial court did not err by refusing to deliver defendant's requested "oral intercourse" instruction. As a result, we modify and affirm the Court of Appeals' decision.

On 26 May 2002, defendant Harold Lamont Fletcher married "Theresa," who had two young children from a previous marriage, including "Diane."[1] Diane referred to defendant, who had become involved in Diane's life when she was one year old, as "Dad." Theresa had known since the beginning of the couple's marriage that defendant had a pornography-related addiction and eventually insisted that defendant receive counseling for this problem. As a result, both defendant and Theresa underwent counseling that was intended to address defendant's pornography-related addiction.

During her third or fourth grade year, Diane noticed that defendant had begun to enter her bedroom after she had gone to bed. On one occasion, Diane found defendant standing over her with his hand on her chest. On another occasion, defendant told Diane that "he was picking a piece of cotton or lint out of [her] mouth from [her] blanket" when she confronted him about being in her room at night. In early March 2012, when she was fifteen years old, Diane saw a red light outside of her bedroom window. A few weeks later, on 12 March 2012, Diane saw a camera

---

[1] "Theresa" and "Diane" are pseudonyms used for ease of reading and to protect the identity of the persons involved.

outside the same window as she dressed. Defendant was outside the family home on both occasions.

In early December 2012, after Diane told Theresa that she believed that defendant was entering her bedroom and "touching her chest," Theresa took Diane to speak with the counselor who had assisted defendant and Theresa with defendant's addiction to pornography, given that the "counselor was aware of [defendant's] habits." After consulting with the counselor, Theresa contacted the New Hanover County Department of Social Services.

Subsequently, the State Bureau of Investigation initiated an investigation into defendant's activities. During a search of the family home, investigating officers seized multiple videos and photographs of Diane from files stored on defendant's computer, including several images depicting Diane in various states of undress and four images depicting a hand holding a penis against or near Diane's mouth while she slept. According to Theresa, the hand and the penis depicted in the second set of images belonged to defendant.

Although defendant admitted that he had recorded images of Diane "in the bathroom getting ready to take a shower, dressing, undressing," and "asleep in her bed" for purposes of "sexual gratification," he denied having ever touched her in an inappropriate manner. At trial, defendant admitted to having committed secret peeping and having taken indecent liberties with a child. However, defendant denied his guilt of statutory sex offense and first-degree sexual exploitation of a minor on the

grounds that the images depicting his penis near Diane's mouth did not show actual conduct and had, instead, been digitally manipulated to produce that appearance. Although Lars Daniel, an expert in digital imaging manipulation, testified that defendant "display[ed] an advanced level of ability [with] Photoshop" and that it was "highly likely" that at least one of the images depicting a penis near Diane's mouth had been digitally manipulated, he could not formulate an opinion concerning the extent, if any, to which any of the other images depicting defendant's penis against or near Diane mouth had been digitally altered.

On 18 March 2013, the New Hanover County grand jury returned bills of indictment charging defendant with one count of first-degree sexual exploitation of a minor; statutory sex offense with a fifteen year-old; eighteen counts of secret peeping; and six counts of taking indecent liberties with a child, with these offenses allegedly having occurred between 24 December 2009 and 3 December 2012. The charges against defendant came on for trial before the trial court and a jury at the 19 May 2014 criminal session of the Superior Court, New Hanover County.

During the jury instruction conference, the trial court rejected defendant's request that the trial court instruct the jury that the "oral intercourse" necessary for a finding of guilt of first-degree sexual exploitation of a minor "requires something more than a mere touching" and could require proof of "penetration, however slight." After the State asserted that proof of penetration was not required to establish "oral intercourse" and that "oral intercourse" and "fellatio" were interchangeable terms,

the trial court refused to instruct the jury in accordance with defendant's request and permitted the parties to advance their competing definitions of "oral intercourse" before the jury during their closing arguments.

Once defendant had asserted in his closing argument that the images depicting his penis on or near Diane's mouth had been digitally altered and that these images, even in their unaltered state, did not depict his penis in physical contact with Diane's mouth, the trial court allowed the prosecutor to argue, over defendant's objection, that:

> The other charge is sexual exploitation of a minor. That's a very fancy way for saying manufacturing or producing child pornography. You have to know the content of the material, using a minor for the purposes of producing material that contains a visual representation depicting sexual activity. Does not matter if the image was altered. If I take a picture of a child from the newspaper at a tennis match and I go back to my house and I take a picture of myself unclothed and I am able to manipulate those photos to show that I am engaged in a sexual act with that child, that's manufacturing child pornography. The child does never have to actually be involved in the sexual act itself.

Although the trial court did instruct the jury that, in order to find defendant guilty of first-degree sexual exploitation of a minor, it had to find beyond a reasonable doubt that "defendant used, induced, coerced, encouraged or facilitated a [minor] to engage in [oral intercourse] for the purpose of producing material that contains a visual representation depicting this activity," the trial court never defined "oral intercourse" during its final instructions to the jury.

On 22 May 2014, the jury returned verdicts finding defendant guilty of first-degree sexual exploitation of a minor, attempted statutory sex offense, eighteen counts of secret peeping, and six counts of taking indecent liberties with a child. On 23 May 2014, the trial court arrested judgment with respect to each of the secret peeping charges; entered judgments sentencing defendant to consecutive terms of 16 to 20 months imprisonment based upon each of defendant's convictions for taking indecent liberties with a child, to a consecutive term of 73 to 97 months based upon defendant's conviction for first-degree sexual exploitation of a minor, and to a consecutive term of 157 to 198 months imprisonment based upon defendant's conviction for attempted statutory sex offense; and ordered that defendant register as a sex offender following his release from imprisonment. Defendant noted an appeal to the Court of Appeals from the trial court's judgments.

In seeking relief from the trial court's judgments before the Court of Appeals, defendant argued that the trial court had erred by allowing the prosecutor "to misstate the law to the jury regarding an essential element of sexual exploitation" of a minor and by failing to instruct the jury that guilt of first-degree sexual exploitation of a minor required proof of "penetration, however slight." In rejecting defendant's challenge to the prosecutor's closing argument, the Court of Appeals determined that "the prosecutor's remarks [constituted] reasonable inferences of the law" given that first-degree sexual exploitation "include[s] digitally manipulated photos that had been produced without a minor being *actually engaged* in sexual activity, provided

that the image depicted an *actual minor* engaged in sexual activity." *State v. Fletcher*, -- N.C. --, 782 S.E.2d 926, 2016 WL 797895 (2016) (unpublished), at *5. The Court of Appeals further noted that, "to the extent that the prosecutor's argument could be construed as a misstatement of law, it was remedied by the trial court's multiple reiterations that it will instruct on the law and its instructing was in accordance with the pattern jury instructions." *Id.* at *6.

Secondly, the Court of Appeals rejected defendant's contention that " 'oral intercourse' requires some evidence that that defendant's male sex organ penetrated Diane's mouth." *Id.* at *9. After acknowledging long-standing precedent to the effect that both vaginal intercourse and anal intercourse require penetration, the Court of Appeals stated that, "[g]iven the ambiguity of the phrase and these indicators of meaning," it would decline "to impose the requirement that, when the State proceeds under 'oral intercourse,' it must prove that the victim's mouth was penetrated." *Id.* at *10. As a result, the Court of Appeals found no error in the proceedings leading to the entry of the trial court's judgments.

In seeking further review of the Court of Appeals' decision by this Court, defendant argued that "the prosecutor misstated the law during his closing argument when he told the jury that it could convict [defendant] of first degree exploitation even if it determined that the images were fabricated or manipulated" and that the trial court's decision to overrule his objection to the prosecutor's argument "endorsed the prosecutor's misstatement in the presence of the jury." In addition, defendant argued

that the Court of Appeals' decision to the effect that " 'oral intercourse' as contemplated by N.C.G.S. § 14-190.16 does not require penetration" "conflict[s] with this Court's well-established precedent regarding the definition of sexual 'intercourse.' " The State, on the other hand, urged us to refrain from granting further review in this case on the grounds that the Court of Appeals had correctly determined that the challenged prosecutorial argument rested upon " 'reasonable inferences' derived from the sexual exploitation statute"; that, "even assuming some impropriety, the trial court's instruction to the jury cured any such improper argument"; and that the Court of Appeals had "relied upon several well established principles of statutory construction" in determining that "oral intercourse" as that term is used in N.C.G.S. § 14-190.13(5)(b) did not involve penetration. We granted defendant's petition for discretionary review of the Court of Appeals' decision on 9 June 2016.

In seeking to persuade us that the trial court erred by overruling his objection to the prosecutor's argument that the images utilized to support the first-degree sexual exploitation of a minor charge did not need to depict actual sexual activity, defendant contends that the relevant statutory provision requires "that a minor actually be exposed to sexual activity" on the grounds that the presence or absence of such activity "is one distinction separating first-degree sexual exploitation from the two lesser degrees of sexual exploitation," citing N.C.G.S. §§ 14-190.17 and 14-190.17A. The trial court's failure to sustain defendant's objection to the challenged prosecutorial argument clearly prejudiced defendant given that his "primary defense"

"was that the images of Diane sleeping" had been "digitally manipulated through the use of computer software" and, "at worst, simulated sexual activity." In defendant's view, the trial court's jury instructions did not suffice to cure the prejudice arising from the prosecutor's argument given that "the pattern instruction employed by the trial court merely tracked the language of the statute, and . . . did not explicitly address the prosecutor's misstatement." Finally, defendant asserted that "the jury's logically inconsistent verdicts of *attempted* statutory sex offense and *completed* first-degree sexual exploitation" highlighted the prejudicial effect of the trial court's error.

Secondly, defendant contends that the trial court's failure to instruct the jury that "oral intercourse" required proof of "penetration, however slight," constituted prejudicial error. After noting that a "trial court is required to give [a requested] instruction, at least in substance, if it is a correct statement of the law and supported by the evidence," citing *State v. Shaw*, 322 N.C. 797, 804, 370 S.E.2d 546, 550 (1988), defendant contends that, because "this Court has consistently held that the phrases 'vaginal intercourse' and 'anal intercourse' both entail penetration, however slight," the statutory reference to "oral intercourse" should be understood to require "penetration" as well given that "it is conclusively presumed that the intention of the Legislature must be taken to be in the import of the words previously judicially construed," quoting *Jones v. Commissioners*, 137 N.C. 579, 608, 50 S.E. 291, 301 (1905).

The State, on the other hand, contends that the Court of Appeals correctly determined that the challenged portion of the prosecutor's argument, rather than misstating the law, reflected a "reasonable inference" "derived from the exploitation statute." Moreover, even if the trial court erred by failing to sustain defendant's challenge to the relevant portion of the prosecutor's argument, "[d]efendant cannot demonstrate prejudicial error" given the overwhelming evidence of defendant's guilt and the fact that the trial court correctly instructed the jury concerning the issue of defendant's guilt of first-degree sexual exploitation of a minor, with any inconsistency between the jury's verdicts concerning the issue of defendant's guilt of statutory sex offense and first-degree sexual exploitation of a minor failing to establish prejudice "stemming from the prosecutor's brief statement concerning manipulated images," citing *State v. Davis*, 214 N.C. 787, 794, 1 S.E.2d 104, 108 (1939) (holding that, if the record contains sufficient evidence to support a verdict, "mere inconsistency will not invalidate the verdict").

In addition, the State asserts that the trial court's jury instructions "adequately addressed each essential element" of the offense of first-degree sexual exploitation of a minor, so that "the trial judge was not required to read [d]efendant's requested jury instruction." According to the State, defendant's requested instruction concerning the definition of "oral intercourse" "would narrow the scope of the statute and . . . [allow] an adult [to] escape prosecution even if he actively filmed or produced a picture of his penis touching the lips, tongue or mouth of a minor" despite the

General Assembly's clear intention to protect minors "from the physiological and psychological injuries resulting from sexual exploitation and abuse," quoting *State v. Williams*, 232 N.C. App. 152, 159, 754 S.E.2d 418, 423-24, *appeal dismissed and disc. rev. denied*, 367 N.C. 784, 766 S.E.2d 846 (2014). As a result, the State urges us to affirm the Court of Appeals' decision.

As a general proposition, parties are given "wide latitude" in their closing arguments to the jury, *State v. Monk*, 286 N.C. 509, 515, 212 S.E.2d 125, 131 (1975) (citations omitted), with the State being entitled to "argue to the jury the law, the facts in evidence and all reasonable inferences drawn therefrom," *State v. Goss*, 361 N.C. 610, 626, 651 S.E.2d 867, 877 (2007) (quoting *State v. Alston*, 341 N.C. 198, 239, 461 S.E.2d 687, 709-10 (1995), *cert. denied*, 516 U.S. 1148, 116 S. Ct. 1021, 134 L. Ed. 2d 100 (1996)), *cert. denied*, 555 U.S. 835, 129 S. Ct. 59, 172 L. Ed. 2d 58 (2008). However, "[i]ncorrect statements of law in closing arguments are improper, and upon [a] defendant's objection, the trial judge should . . . sustain [the] objection and instruct the jury to disregard the statement." *State v. Ratliff*, 341 N.C. 610, 616-17, 461 S.E.2d 325, 328-29 (1995) (citation omitted).[2] A challenge to the trial court's

---

[2] Although the State contends that defendant's general objection did not suffice to preserve his challenge to the trial court's failure to sustain his objection to the challenged portion of the prosecutor's argument for purposes of appellate review, no statement of the basis for an objection is required unless the ground for the objection is "not apparent from the context." N.C. R. App. P. 10(a)(1). When the relevant portions of the State's final argument are considered in the context of the basic thrust of defendant's defense, the basis for defendant's objection is obvious. As a result, we conclude that defendant's challenge to the trial court's refusal to sustain defendant's objection to a portion of the prosecutor's final argument is properly preserved for purposes of appellate review.

failure to sustain a defendant's objection to a comment made during the State's closing argument is reviewed for an abuse of discretion, *State v. Walters*, 357 N.C. 68, 101, 588 S.E.2d 344, 364 (citing *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002)), *cert. denied*, 540 U.S. 971, 124 S. Ct. 442, 157 L. Ed. 2d 320 (2003), with the reviewing court being required to "first determine if the remarks were improper" and then "determine if the remarks were of such a magnitude that their inclusion prejudiced [the] defendant." *Id.* at 101, 588 S.E.2d at 364 (citing and quoting *Jones*, 355 N.C. at 131, 558 S.E.2d at 106). Assuming that the trial court's refusal to sustain the defendant's objection was erroneous, the defendant must show that there is a reasonable possibility that the jury would have acquitted him had the challenged argument not been permitted. *Ratliff*, 341 N.C. at 617, 461 S.E.2d at 329 (citing, *inter alia*, N.C.G.S. § 15A-1443(a) (1988), which is identical to the current statute).

The statutory framework governing criminal liability arising from the creation and distribution of child pornography was initially enacted by the General Assembly in 1985. *Cinema I Video, Inc. v. Thornburg*, 320 N.C. 485, 489, 358 S.E.2d 383, 384 (1987). Under the current statutory scheme, a defendant can be convicted of sexual exploitation of a minor in the event that he commits a variety of acts, with the defendant's conduct being subject to varying degrees of punishment depending upon the nature and extent of the defendant's involvement with the minor in question. *See* N.C.G.S. §§ 14-190.16, -190.17 (2015); *see also id.* § 14-190.17A (2015) (enacted in 1989). For example, the offense of third-degree sexual exploitation of a minor

prohibits the mere possession of child pornography. *See id.* § 14-190.17A(a) (stating that "[a] person commits the offense of third degree sexual exploitation of a minor if, knowing the character or content of the material, he possesses material that contains a visual representation of a minor engaging in sexual activity"). On the other hand, a defendant commits the offense of second-degree sexual exploitation of a minor if he or she "[r]ecords, photographs, films, develops, or duplicates material that contains a visual representation of a minor engaged in sexual activity; or . . . [d]istributes, transports, exhibits, receives, sells, purchases, exchanges, or solicits material that contains a visual representation of a minor engaged in sexual activity," *id.* § 14-190.17(a)(1)-(2), with the common thread running through the conduct statutorily defined as second-degree sexual offense being that the defendant had taken an active role in the production or distribution of child pornography without directly facilitating the involvement of the child victim in the activities depicted in the material in question. Finally, the offense of first-degree sexual exploitation of a minor is committed if the defendant, "knowing the character or content of the material or performance":

> (1)    Uses, employs, induces, coerces, encourages, or
> facilitates a minor to engage in or assist others to engage
> in sexual activity for a live performance or for the purpose
> of producing material that contains a visual representation
> depicting this activity; or
>
> (2)    Permits a minor under his custody or control to
> engage in sexual activity for a live performance or for the

purpose of producing material that contains a visual representation depicting this activity; or

(3)    Transports or finances the transportation of a minor through or across this State with the intent that the minor engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity; or

(4)    Records, photographs, films, develops, or duplicates for sale or pecuniary gain material that contains a visual representation depicting a minor engaged in sexual activity.

*Id.* § 14-190.16(a).[3]  As a result, the acts necessary to establish the defendant's guilt of first-degree sexual exploitation of a minor can be categorized as involving either direct facilitation of the minor's involvement in sexual activity or the production of child pornography for sale or profit.  *See id.*

The indictment returned against defendant for the purpose of charging him with first-degree sexual exploitation of a minor alleged that defendant "use[d] or induce[d] or coerce[d] or encourage[d] or facilitate[d] [Diane] to engage in sexual activity, oral intercourse, for the purpose of producing material containing a visual representation depicting this activity" while "knowing the character of the material." As a result, the record clearly establishes that the State sought to prosecute defendant for committing the offense delineated in N.C.G.S. § 14-190.16(a)(1).

---

[3] The definition of "sexual activity" as set out in N.C.G.S. § 14-190.13(5) (2015) is discussed in more detail below.  The "act" of being photographed while sleeping does not, however, fall within any component of the statutory definition of "sexual activity" contained in that statutory provision.

According to the plain language of the relevant statutory provision, the minor in question is required to have engaged in sexual activity. *See Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980) (stating that, "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it plain and definite meaning") (citations omitted); s*ee also Cinema I Video, Inc., v. Thornburg*, 83 N.C. App. 544, 566, 351 S.E.2d 305, 319 (1986) (concluding that the statutory provisions prohibiting the sexual exploitation of a minor contemplate "live performance or photographic or other visual reproduction of live performances") (quoting *New York. v. Ferber*, 458 U.S. 747, 765, 102 S. Ct. 3348, 3358, 73 L. Ed. 2d 1113, 1127 (1982)), *aff'd*, 320 N.C. 485, 358 S.E.2d 383 (1987). Thus, when the minor depicted in an image appears to have been shown as engaged in sexual activity as the result of digital manipulation, the defendant has not committed the offense of first-degree sexual exploitation of a minor. As a result, both the prosecutor's assertion that it "[d]oes not matter if the image [appearing to depict sexual activity involving a minor] was altered" and the prosecutor's statement that, "[i]f I take a picture of a child from the newspaper . . . and I take a picture of myself unclothed, and I am able to manipulate those photos to show that I am engaged in a sexual act with that child, that's manufacturing child pornography" constitute misstatements of the applicable law.

The State's reliance upon the decision of the United States Supreme Court in *United States v. Williams*, 553 U.S. 285, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008), to

support its defense of the prosecutor's argument is misplaced.  As an initial matter, the issue before the Court in *Williams* was whether a federal statute that "criminalizes, in certain specified circumstances, the pandering or solicitation of child pornography" was impermissibly "overbroad under the First Amendment [to the United States Constitution] or impermissibly vague under the Due Process Clause of the Fifth Amendment." *Id.* at 288, 128 S. Ct. at 1835, 170 L. Ed. 2d at 659.  In other words, *Williams* addressed the issue of whether a legislative body could constitutionally criminalize certain conduct rather than whether the General Assembly, in enacting N.C.G.S. § 14-190.16(a)(1), actually did criminalize certain types of conduct.[4]  Secondly, the federal statutory provision at issue in *Williams*, unlike N.C.G.S. § 14-190.16(a)(1), explicitly defined prohibited "sexually explicit conduct" as including various acts that could be either "actual or simulated."  *Id.* at 290, 128 S. Ct. at 1837, 170 L. Ed. 2d at 661.  As a result, even though "[t]he emergence of new technology and the repeated retransmission of picture files over the Internet could make it nearly impossible to prove that a particular image was produced using real children," *id.* at 290, 128 S. Ct. at 1837, 170 L. Ed. 2d at 661, the United States Supreme Court's decision in *Williams* has no bearing upon the proper resolution of defendant's first challenge to the trial court's judgments.

---

[4] We do not, of course, wish the textual discussion to be understood as expressing any opinion concerning the extent, if any, to which digitally altering otherwise innocent photographs of minors so as to create images that appear to depict the minor engaged in sexual activity or the possession of such digitally altered images constitute either second-degree sexual exploitation of a minor or third-degree sexual exploitation of a minor.

Although the trial court erred by failing to sustain defendant's objection to the challenged prosecutorial argument, the commission of such an error, standing alone, does not suffice to justify a decision to award defendant a new trial, *see State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208, *cert. denied*, 510 U.S. 1028, 114 S. Ct. 644, 126 L. Ed. 2d 602 (1993), given that a party's misstatement of the law during the course of its final argument is deemed to have been "cured by the court's correct jury instructions on [the issue misstated]," *State v. Phillips*, 365 N.C. 103, 140, 711 S.E.2d 122, 148 (2011), *cert. denied*, 565 U.S. 1204, 132 S. Ct. 1541, 182 L. Ed. 2d 176 (2012); *see also State v. Anderson*, 322 N.C. 22, 38, 366 S.E.2d 459, 469, *cert. denied*, 488 U.S. 975, 109 S. Ct. 513, 102 L. Ed. 2d 548 (1988). As defendant concedes, the trial court instructed the jury that it could only convict defendant of first-degree sexual exploitation of a minor in the event that it found beyond a reasonable doubt that "the defendant used, induced, coerced, encouraged or facilitated a person to engage in sexual activity for the purpose of producing material that contains a visual representation depicting this activity," with "[o]ral intercourse [constituting] sexual activity." Although this instruction explicitly informed the jury that, in order for it to return a guilty verdict, it had to find that defendant "used, induced, coerced, encouraged or facilitated" Diane's involvement in sexual activity, defendant contends that a finding that the trial court's failure to sustain his objection to the prosecutor's misstatement of the law constituted harmless error would be inappropriate given the centrality of the issue addressed in the challenged portion of the prosecutor's

argument to defendant's defense and the fact that the trial court's decision to overrule his objection to the relevant portion of the prosecutor's argument placed the imprimatur of the trial court's approval on the challenged argument. However, given the clarity of the language used in the trial court's instruction and the absence of any North Carolina authority tending to support defendant's contention, we do not find defendant's contentions with respect to the prejudice issue persuasive.[5]

Moreover, the fact that the jury returned what defendant describes as "inconsistent" verdicts has no tendency to show that it failed to understand and heed the trial court's instructions concerning the showing that the State was required to make in order for the jury to convict defendant of first-degree sexual exploitation of a minor, which clearly required proof beyond a reasonable doubt that defendant used Diane to engage in actual sexual activity. Although the jury's verdicts might have some tendency to suggest that the jury had difficulty determining whether defendant's penis actually touched Diane's lips, its verdicts do not in any way tend to suggest that the jury accepted the prosecutor's contention that a conviction for first-

---

[5] Although defendant did cite the United States Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), in support of the prejudice argument discussed in the text, his reliance on *Bruton* is unavailing given that this case involves a prosecutorial misstatement of the law that was corrected in the trial court's jury instructions while *Bruton* involved the admission of a codefendant's confession that also implicated the defendant subject to an instruction that the jury should only consider the information contained in the codefendant's confession against the codefendant. Unlike the evidence at issue in *Bruton*, the challenged prosecutorial argument cannot reasonably be described as "of the most persuasive sort, ineradicable, as a practical matter, from the jury's mind[.]" *Kansas v. Carr*, 577 U.S. ___, ___, 136 S. Ct. 633, 645, 193 L. Ed. 2d 535, 548 (2016) (citations omitted).

degree sexual exploitation of a minor can rest upon digitally altered images rather than evidence of some sort of actual sexual activity. As a result, we do not believe that there is any reasonable possibility that, but for the trial court's failure to sustain defendant's objection to the prosecutor's misstatement of the applicable law, the jury would have acquitted defendant of first-degree sexual exploitation of a minor. *Ratliff*, 341 N.C. at 617, 461 S.E.2d at 329; *see also* N.C.G.S. § 15A-1443(a) (2015)).

"The jury charge is one of the most critical parts of a criminal trial." *State v. Walston*, 367 N.C. 721, 730, 766 S.E.2d 312, 318 (2014). "The purpose of . . . a charge to the jury is to give a clear instruction to assist the jury in an understanding of the case and in reaching a correct verdict," *Shaw*, 322 N.C. at 803, 370 S.E.2d at 549, including how "the law . . . should be applied to the evidence," *State v. Sutton*, 230 N.C. 244, 247, 52 S.E.2d 921, 923 (1949) (citations omitted). As a result, the trial court has a duty "to instruct the jury on all substantial features of a case raised by the evidence." *Shaw*, 322 N.C. at 803, 370 S.E.2d at 549 (citing *State v. Ferrell*, 300 N.C. 157, 163, 265 S.E.2d 210, 214 (1980), *disapproved of on other grounds by State v. Collins*, 334 N.C. 54, 61, 431 S.E.2d 188, 193 (1993)). In the event that a "defendant's request for [an] instruction [is] correct in law and supported by the evidence in the case, the trial court [is] required to give the instruction, at least in substance." *Shaw*, 322 N.C. at 804, 370 S.E.2d at 550 (citing *State v. Howard*, 274 N.C. 186, 199, 162 S.E.2d 495, 504 (1968)). "[I]n giving jury instructions," however, " 'the court is not required to follow any particular form,' as long as the instruction

adequately explains 'each essential element of the offense.'" *Walston*, 367 N.C. at 731, 766 S.E.2d at 319 (quoting *State v. Avery*, 315 N.C. 1, 31, 337 S.E.2d 786, 803 (1985)). Even if a trial court errs by failing to give a requested and legally correct instruction, the defendant is not entitled to a new trial unless there is "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a); *see also Shaw*, 322 N.C. at 804, 370 S.E.2d at 550.

As we have already noted, defendant was charged with "us[ing], employ[ing], induc[ing], coerc[ing], encourag[ing], or facilitat[ing] a minor to engage in . . . sexual activity . . . for the purpose of producing material that contains a visual representation depicting this activity." N.C.G.S. § 14-190.16(a)(1). "Sexual activity" for purposes of N.C.G.S. § 14-190.16(a)(1) consists of:

> a. Masturbation, whether done alone or with another human or an animal.
>
> b. Vaginal, anal, or oral intercourse, whether done with another human or with an animal.
>
> c. Touching, in an act of apparent sexual stimulation or sexual abuse, of the clothed or unclothed genitals, pubic area, or buttocks of another person or the clothed or unclothed breasts of a human female.
>
> d. An act or condition that depicts torture, physical restraint by being fettered or bound, or flagellation of or by a person clad in undergarments or in revealing or bizarre costume.

e. Excretory functions; provided, however, that this sub-subdivision shall not apply to [N.C.]G.S. [§] 14-190.17A.

f. The insertion of any part of a person's body, other than the male sexual organ, or of any object into another person's anus or vagina, except when done as part of a recognized medical procedure.

g. The lascivious exhibition of the genitals or pubic area of any person.

*Id.* § 14-190.13(5) (2015). In rejecting defendant's request that the trial court instruct the jury that "oral intercourse" for purposes of N.C.G.S. § 14-190.13(5)(b) involves penetration, the trial court stated that, since "the indictment indicates that the sexual activity was oral intercourse," he would "instruct the jury that the sexual activity was oral intercourse" without further defining that term and would "allow counsel to argue definitions of oral intercourse and fellatio."[6]

The extent to which "oral intercourse," as that term is used in N.C.G.S. § 14-190.13(5)(b), requires penetration presents a question of first impression for this Court. "When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself." *State v. Ward*, 364 N.C. 157, 160, 694

---

[6] As an aside, we urge the members of the trial bench to refrain from avoiding the necessity for instructing the jury concerning all of the essential elements of first-degree sexual exploitation of a minor or any other offense by allowing the parties to argue alternative definitions of a relevant statutory expression in lieu of defining that expression during the trial court's final instructions. As we have already indicated, "[i]t is the duty of the trial court to instruct the jury on all substantial features of a case," including the definition of statutory terms such as "oral intercourse," to the extent that it is necessary to clarify the nature of the decision that the jury is required to make. *Shaw*, 322 N.C. at 803, 370 S.E.2d at 549.

S.E.2d 729, 731 (2010). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005). Aside from the fact that neither the General Assembly[7] nor the courts[8] have defined "oral intercourse," that term lacks an unambiguous "plain and definite meaning" as well. *Id.* at 614, 614 S.E.2d at 277. Although courts often consult dictionaries for the purpose of determining the plain meaning of statutory terms, *see State v. Ludlum*, 303 N.C. 666, 671, 281 S.E.2d 159, 162 (1981), that approach is of no avail in this case given the absence of any definition of "oral intercourse" in reference volumes such as *Webster's Third New International Dictionary* (1971), *The American Heritage Dictionary of the English Language* (4th ed. 2000), and the *New Oxford American Dictionary* (3d ed. 2010), or in online dictionaries, *see, e.g.*, *Merriam-Webster*,

---

[7] The term "oral intercourse" does appear, without further definition, in N.C.G.S. § 14-190.1(c)(1), which defines "sexual conduct" in the context of punishing "[o]bscene literature and exhibitions," and N.C.G.S. § 15A-615, which permits testing defendants charged with committing offenses that "involve[ ]nonconsensual vaginal, anal, or oral intercourse" or "vaginal, anal, or oral intercourse" with a victim under the age of sixteen for the presence of sexually transmitted diseases. N.C.G.S. §§ 14-190.1(c)(1), 15A-615(a) (2015).

[8] Although the term "oral intercourse" does appear in some of this Court's opinions, these references consist of quotations from various statutory provisions or portions of the pattern jury instructions or of references to factual information contained in the record. None of these references shed any light upon the proper resolution of the question that we are called upon to decide in this case. *See, e.g.*, *State v. Autry*, 321 N.C. 392, 395, 364 S.E.2d 341, 344 (1988); *State v. Locklear*, 320 N.C. 754, 756, 360 S.E.2d 682, 683 (1987); *State v. Tucker*, 317 N.C. 532, 535, 346 S.E.2d 417, 419 (1986); *State v. Ford*, 314 N.C. 498, 503, 334 S.E.2d 765, 769 (1985); *State v. Jean*, 310 N.C. 157, 159, 311 S.E.2d 266, 267 (1984); *State v. Riddle*, 300 N.C. 744, 745, 268 S.E.2d 80, 81 (1980); *State v. Self*, 280 N.C. 665, 667, 187 S.E.2d 93, 94 (1972).

https://www.merriam-webster.com (last visited May 25, 2017).[9] As a result, given the absence of any generally accepted understanding of the meaning of the statutory reference to "oral intercourse," "judicial construction must be used to ascertain the legislative will." *Beck*, 359 N.C. at 614, 614 S.E.2d at 277 (quoting *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990)).

According to well-established North Carolina law, "[t]he intent of the Legislature controls the interpretation of a statute." *State v. Joyner*, 329 N.C. 211, 217, 404 S.E.2d 653, 657 (1991) (quoting *State v. Perry*, 305 N.C. 225, 235, 287 S.E.2d 810, 816 (1982), *overruled by State v. Mumford*, 364 N.C. 394, 402, 699 S.E.2d 911, 916 (2010)). "In ascertaining such intent, a court may consider the purpose of the statute and the evils it was designed to remedy, the effect of the proposed interpretations of the statute, and the traditionally accepted rules of statutory construction." *State v. Tew*, 326 N.C. 732, 738-39, 392 S.E.2d 603, 607 (1990) (citation omitted); *see also State v. Barnett*, 369 N.C. 298, 304, 794 S.E.2d 306, 311 (2016) (stating that, "[i]n ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish"

---

[9] The dictionaries that have been consulted in the drafting of this opinion do consistently define "oral sex" as the oral stimulation of the sex organ of another without making any reference to any sort of penetration requirement. *See, e.g.*, *New Oxford American Dictionary* 1233 (3d ed. 2010) (defining "oral sex" as "sexual activity in which the genitals of one partner are stimulated by the mouth of the other; fellatio or cunnilingus"); *The American Heritage Dictionary of the English Language* 1236 (4th ed. 2000) (defining "oral sex" as "oral stimulation of one's partner's sex organs"); *Merriam-Webster*, https://www.merriam-webster.com/dictionary/oral%20sex (last visited May 25, 2017) (defining "oral sex" as "oral stimulation of the genitals: cunnilingus, fellatio").

(quoting *State ex rel. Utils. Comm'n v. Pub. Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 444 (1983))). Although the title given to a particular statutory provision is not controlling, it does shed some light on the legislative intent underlying the enactment of that provision. *Brown v. Brown*, 353 N.C. 220, 224, 539 S.E.2d 621, 623 (2000) (first citing *In re Forsyth County*, 285 N.C. 64, 71, 203 S.E.2d 51, 55 (1974); and then citing *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 812, 517 S.E.2d 874, 879 (1999)). Similarly, "[w]hile a criminal statute must be strictly construed against the State, the courts must nevertheless construe it with regard to the evil which it is intended to suppress." *Tew*, 326 N.C. at 739, 392 S.E.2d at 607 (citation omitted). "A construction of a statute which operates to defeat or impair its purpose must be avoided if that can reasonably be done without violence to the legislative language." *Id.* at 739, 392 S.E.2d at 607 (citation omitted).

Statutory provisions criminalizing the making, dissemination, and possession of child pornography have been enacted by "virtually all of the States and the United States" out of concern "that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *New York v. Ferber*, 458 U.S. at 758, 102 S. Ct. at 3355, 73 L .Ed. 2d at1123. Such laws

> are designed to prevent the victimization of individual children, and to protect "minors from the physiological and psychological injuries resulting from sexual exploitation and abuse." This Court has noted that child pornography poses a particular threat to the child victim because "the child's actions are reduced to a recording [and] the

> pornography may haunt him in future years, long after the original misdeed took place."

*State v. Howell,* 169 N.C. App. 58, 63, 609 S.E.2d 417, 420-21 (2005) (alteration in original) (quoting *Cinema I Video*, 83 N.C. App. at 5552, 568-69, 351 S.E.2d at 311, 320)). Thus, as is evidenced by the legislative decision to title the relevant legislation as "An Act To Strengthen the Obscenity Laws of this State and the Enforcement of These Laws, To Protect Minors from Harmful Material that Does Not Rise to the Level of Obscenity, and To Stop the Sexual Exploitation and Prostitution of Minors," *see* Act of July 11, 1985, ch. 703, 1985 N.C. Sess. Laws 929, we have no hesitation in concluding that the General Assembly enacted N.C.G.S. § 14-190.16(a)(1) for the purpose of protecting minors from the harms arising from the "use[ ], employ[ment], induce[ment], coerc[ion], encourage[ment], or facilitat[ion] [of] a minor to engage in or assist others to engage in sexual activity for live performance or for the purpose of producing material that contains a visual representation depicting this activity." N.C.G.S. 14-190.16(a)(1). As a result, we believe that the General Assembly intended that the relevant statutory language be construed broadly in order to provide minors with the maximum reasonably available protection from sexual exploitation.

Adoption of the definition of "oral intercourse" as requiring proof of penetration as contended for by defendant would contravene this understanding of the relevant legislative intent by narrowing the scope of the protections from the sexual exploitation of minors afforded by N.C.G.S. § 14-190.16(a)(1). Although this Court

has consistently held that other forms of "intercourse" require "penetration, however slight," that definition appears to have been limited in recent years to sexual acts that inherently involve penetration of the body of another by the male sex organ. *See, e.g., State v. Brown*, 312 N.C. 237, 244-45, 321 S.E.2d 856, 861 (1984) (defining vaginal intercourse as the "*slightest* penetration of the female sex organ by the male sex organ"); *State v. Atkins*, 311 N.C. 272, 275, 316 S.E.2d 306, 308 (1984) (stating that anal intercourse "requires penetration of the anal opening . . . by the penis"). "When a term has long-standing legal significance, it is presumed that legislators intended the same significance to attach by use of that term, absent indications to the contrary." *Black v. Littlejohn*, 312 N.C. 626, 639, 325 S.E.2d 469, 478 (1985) (quoting *Sheffield v. Consol. Foods Corp.*, 302 N.C. 403, 427, 276 S.E.2d 422, 437 (1981)). For that reason, we conclude that the references to vaginal and anal intercourse contained in N.C.G.S. § 14-190.13(5)(b) assume the existence of a penetration requirement. On the other hand, we believe that, when read in context, "oral intercourse" was intended as a gender-neutral reference to cunnilingus and fellatio, which are the only components of the definition of "sexual act" as currently set out in N.C.G.S. § 14-27.20(4) that are not otherwise explicitly included in the definition of "sexual activity" contained in N.C.G.S. § 14-190.13(5).[10] As we have

---

[10] Appellate courts in other jurisdictions have reached similar conclusions. For example, the South Carolina Court of Appeals held that cunnilingus constituted "sexual battery," statutorily defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of another person's body," despite the absence of penetration. *State v.*

previously recognized, neither fellatio nor cunnilingus, as those terms are currently used in N.C.G.S. § 14-27.20(4), require penetration. *State v. Goodson*, 313 N.C. 318, 319, 327 S.E.2d 868, 869 (1985) (defining "fellatio" as "oral sex" performed by a female upon a male consisting of "contact between the mouth of one party and the sex organs of another" without making any mention of penetration); *Ludlum*, 303 N.C. at 669, 281 S.E.2d at 161 (stating that "[w]e do not agree, however, that penetration is required before cunnilingus, as that word is used in the statute, can occur"). In light of the obvious legislative intent to provide broad protection against the sexual exploitation of minors, the fact that the existence of a penetration requirement with respect to "vaginal intercourse" and "anal intercourse" does not logically compel a determination that "oral intercourse" includes a penetration requirement as well, the inconsistent treatment between the offense of sexual exploitation of a minor and

---

*Morgan*, 352 S.C. 359, 365, 574 S.E.2d 203, 206 (S.C. Ct. App. 2002) (emphasis omitted) (quoting S.C. Code Ann. § 16-3-651(h) (1985)); *see also Stephan v. State*, 810 P.2d 564, 568 (Alaska Ct. App. 1991) (stating that cunnilingus constituted "sexual penetration," defined as "genital intercourse, cunnilingus, fellatio, anal intercourse, or an intrusion, however slight, of an object or any part of a person's body into the genital or anal opening of another person's body," despite the absence of penetration) (quoting Alaska Stat. Ann. § 11.81.900(b)(53) (1991)); *State v. Beaulieu*, 674 A.2d 377, 378 (R.I. 1996) (per curiam) (concluding that cunnilingus, in the absence of evidence of penetration, establishes a defendant's guilt of first-degree sexual assault given that R.I. Gen. Laws 1956 § 11-37-1(8) "does not require *actual penetration*, only sexual penetration"); *State v. Marcum*, 109 S.W.3d 300, 303 & n.4, 304 (Tenn. 2003) (holding that a defendant was not entitled to a jury instruction concerning the issue of his guilt of attempted rape of child based upon fellatio, without evidence of actual penetration, given the statutory definition of "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of [the] person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body") (quoting Tenn. Code Ann. § 39-13-501(7) (1997)).

sexual offense that would result from the interpolation of a penetration requirement into the definition of "oral intercourse," and the desirability of avoiding "saddl[ing] the criminal law with hypertechnical distinctions and the prosecution with overly complex and in some cases impossible burdens of proof," *Ludlum*, 303 N.C. at 672, 281 S.E.2d at 162,[11] we decline to adopt defendant's proposed definition of "oral intercourse" as containing a penetration requirement and conclude, that since defendant's requested instruction did not constitute an accurate statement of the applicable law, s*ee Shaw*, 322 N.C. at 804, 370 S.E.2d at 550, the trial court did not err by refusing to instruct the jury in accordance with defendant's request. As a result, for the reasons set forth above, the decision of the Court of Appeals, as modified in this opinion, is affirmed.

MODIFIED AND AFFIRMED.

---

[11] The fact that defendant's conviction for first degree sexual exploitation of a minor rests upon conduct that would also be included within the scope of another subsection of definition of "sexual activity" set out N.C.G.S. § 14-190.13(5) does not necessitate the inclusion of a penetration requirement into the definition of "oral intercourse" given that there is much overlap in the conduct described in the various components of that definition. For example, both vaginal and anal intercourse, as this Court has defined those terms, would appear to involve "[t]ouching, in an act of apparent sexual stimulation or sexual abuse, of the clothed or unclothed genitals, pubic area, or buttocks of another person or the clothed or unclothed breasts of a human female." N.C.G.S. § 14-190.13(5)(c).

Justice MORGAN concurring in part and concurring in the result only in part.

I concur with the majority decision's reasoning and holding that the prosecutor's challenged statements—that manipulating innocent images so that they *appear* to show a child engaged in a sexual act is manufacturing child pornography and thus constitutes first-degree sexual exploitation of a minor—were erroneous, but not prejudicial.

With regard to the denial of defendant's request for a jury instruction defining "oral intercourse," I further concur with the majority's ultimate determination that defendant is not entitled to a new trial on that basis. Nonetheless, I reach this result only because I believe that defendant cannot establish prejudice, and not on the basis that the trial court did not err in refusing to give defendant's requested definition. Proper application of principles of statutory interpretation demonstrates that the term "oral intercourse" as used in the sexual exploitation statutes is defined as requiring penetration, however slight, of the mouth by the male sex organ. Accordingly, the trial court should have so instructed the jury at defendant's request.

Before addressing the divergence of my analysis from that of the majority on this issue, I first note three key points of agreement with my esteemed colleagues. First, the issue of whether, in the context of our State's sexual exploitation statutes, "oral intercourse" requires penetration presents a matter of first impression for this Court. Second, because "oral intercourse" is not clearly defined in case law, statutes, or general usage dictionaries, we must employ principles of statutory construction to determine the meaning of the term. Third, and most critically, I emphatically agree

*Morgan, J., concurring in part and concurring in result only in part.*

with the majority that the General Assembly undoubtedly intended for the sexual exploitation statutes to apply to the sex acts that defendant committed against Diane.

For purposes of sexual exploitation, as well as other public morality and decency offenses concerning minors, N.C.G.S. § 14-190.13 (the definitions statute) defines "[s]exual activity" to encompass numerous acts, including "[m]asturbation"; "[v]aginal, anal, or oral intercourse"; the sexually stimulating or sexually abusive touching of the genitals, pubic area, or buttocks of another, or of the female breasts; sexualized torture, bondage, and sadomasochistic behaviors; "[e]xcretory functions"; penetration of the vagina or anus by an object or a body part other than the male sex organ; and "lascivious exhibition of the genitals or pubic area." N.C.G.S. § 14-190.13(5)(a)-(g) (2015). This review illustrates the broad range and diverse nature of the acts that the General Assembly sought to prohibit in protecting children from the harms of pornography and sexual exploitation. In light of this important purpose and the lengthy enumeration of acts that constitute sexual activity, I consider it to be beyond question that the General Assembly intended that, for purposes of the crime of sexual exploitation of a minor, the term "sexual activity" should include *both* the penetration of the mouth by the male sex organ as well as the mere touching of the male sex organ with the mouth, even without penetration.

It is at this stage, however, that my analysis of the proper means to arrive at the correct outcome in this case diverges from the rationales employed by my learned colleagues. The necessary goal of the protection of society's vulnerable minors from

*Morgan, J., concurring in part and concurring in result only in part.*

sexual exploitation can still be accomplished in our courts without compromising this Court's well-established and long-standing recognition of the need to construe statutes consistently. Such expected consistency would certainly include a construction of terminology that is harmonious throughout the spectrum of statutory enactments which address a given area of the criminal law. While these fundamental principles of statutory construction are deeply embedded in analyses routinely applied by this Court, the majority unfortunately departs from them in its interpretation of the term "intercourse" when we are called upon to ascribe a definition to the term "oral intercourse."

Upon this premise, I do not subscribe to the majority's unsupported assertion that "[a]doption of the definition of 'oral intercourse' as requiring proof of penetration . . . would contravene this understanding of the relevant legislative intent by narrowing the scope of protections" under the sexual exploitation statute.[1] Application of the well-established rules of statutory construction reveals that the mere touching of the male sex organ with the mouth falls under subdivision (5)(c) of the definitions statute—"[t]ouching, in an act of apparent sexual stimulation or

---

[1] Likewise, the State argued that mere touching of a sex organ with the mouth can only fall under subdivision (5)(b) as a form of "oral intercourse" and asserted that, were this Court to hold that "oral intercourse" requires penetration, a visual representation depicting the act of touching a child's lips with a penis could not support a prosecution for sexual exploitation. As with all cases, the State must simply take care to indict a defendant correctly under the applicable statutory provision in light of the behavior constituting a criminal offense.

*Morgan, J., concurring in part and concurring in result only in part.*

sexual abuse, of the clothed or unclothed genitals"—while the penetration of the mouth by the male sex organ falls under subdivision (5)(b), which includes, *inter alia*, "oral intercourse." *Id.* § 14-190.13(5)(b), (c). Therefore, the specific sexual activity for which defendant allegedly used Diane *is* a form of sexual exploitation of a minor, namely, sexual touching and not "oral intercourse." This distinction is neither trivial nor academic since, as defendant observes, here "the State elected to exclusively indict under a theory of 'oral intercourse,' and it was bound to prove that theory." *See State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980) (A defendant may not be "convict[ed] upon some abstract theory not supported by the bill of indictment.").

When, as here, a statutory term is not clear, any "ambiguity should be resolved so as to effectuate the true legislative intent." *State ex rel. Comm'r of Ins. v. N.C. Auto. Rate Admin. Office*, 287 N.C. 192, 202, 214 S.E.2d 98, 104 (1975) (citing *Duncan v. Carpenter & Phillips*, 233 N.C. 422, 64 S.E.2d 410 (1951), *overruled on other grounds* by *Taylor v. J. P. Stevens & Co.*, 300 N.C. 94, 265 S.E.2d 144 (1980), *McLean v. Durham Cty. Bd. of Elections*, 222 N.C. 6, 21 S.E.2d 842 (1942), and *State ex rel. Thomasson v. Patterson*, 213 N.C. 138, 195 S.E. 389 (1938)). In my view, the point of ambiguity here is simply whether the General Assembly intended to regard the undefined act of "oral intercourse" in the same manner as the other acts listed in N.C.G.S. § 14-190.13(5)(b) that contain the word "intercourse" and are clearly defined, or in the same manner as acts included in N.C.G.S. § 14-190.13(5)(f) as a form of sexual touching. In construing a statute, we presume that none of its subdivisions

*Morgan, J., concurring in part and concurring in result only in part.*

are redundant. *Sheffield v. Consol. Foods Corp.*, 302 N.C. 403, 421-22, 276 S.E.2d 422, 434 (1981) (citing *Jones v. Cty. Bd. of Educ.*, 185 N.C. 303, 307, 117 S.E. 37, 39 (1923)). Accordingly, I proceed on the presumption that the subdivisions of the definitions statute are not duplicative and that the touching of a male sex organ to the mouth or lips without penetration is covered under only one of them.

As acknowledged in the majority decision, this Court has consistently held that other forms of "intercourse" require penetration with the male sex organ, however slight. *See, e.g., State v. Brown*, 312 N.C. 237, 244-45, 321 S.E.2d 856, 861 (1984) (stating that vaginal intercourse includes the "*slightest* penetration of the female sex organ by the male sex organ"); *State v. Atkins*, 311 N.C. 272, 275, 316 S.E.2d 306, 308 (1984) (stating that anal intercourse "requires penetration of the anal opening . . . by the penis"). The majority suggests that this definition of "intercourse" has "been limited in recent years[2] to sexual acts that inherently involve penetration of the body of another by the male sex organ." While this observation may have some interesting historic validity, it bears no substantive legal applicability. The legal terms "anal intercourse" and "vaginal intercourse" are explicitly *defined* as the penetration of the anus and vagina, respectively, by the male sex organ. Thus, the penetration element of "anal intercourse" and "vaginal intercourse" is only "inherent" to these acts in the

---

[2] I would observe that the sexual exploitation statutes were first enacted in 1985. The General Assembly's understanding and intent in its statutory enactments before 1985 that are still valid, and the applicable case law interpreting them that also is still valid, should not be discounted merely because they are older.

way that the *defining* characteristics of *any* sex act are. In this regard, elementary principles of statutory construction yield the conclusion that a consistent interpretation of the word "intercourse" inherently contemplates "penetration."

In determining legislative intent, I discern no evidence that the General Assembly intended to "limit" or alter the meaning of the term "intercourse" when it drafted the sexual exploitation laws in 1985. The definition of "intercourse" as requiring penetration by the male sex organ appears in decisions of this Court dating back at least to the middle of the twentieth century, nearly seven decades ago.[3] *See, e.g., State v. Bowman*, 232 N.C. 374, 375-76, 61 S.E.2d 107, 108 (1950) ("There is 'carnal knowledge' or 'sexual intercourse' in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male."). As noted by the majority, "[w]hen a term has long-standing legal significance, it is presumed that legislators intended the same significance to attach by use of that term, absent indications to the contrary." *Black v. Littlejohn*, 312 N.C. 626, 639, 325 S.E.2d 469, 478 (1985) (quoting *Sheffield*, 302 N.C. at 427, 276 S.E.2d at 437). Because our case law as demonstrated in *Bowman* had clearly defined "intercourse" as requiring penetration by the male sex organ some thirty-five years before the enactment of the sexual exploitation statutes in 1985, the General Assembly must be

---

[3] Similarly, general usage dictionaries define "sexual intercourse" as "sexual contact between individuals *involving penetration*, esp. *the insertion of a man's erect penis* into a woman's vagina." *New Oxford American Dictionary* 1601 (3d ed. 2010) (emphasis added).

*Morgan, J., concurring in part and concurring in result only in part.*

viewed to have intended this same word in the phrase "oral intercourse" to also require penetration.

This legislative intent appears even clearer in light of the other terms that the General Assembly has employed to encompass contact between the mouth and sexual organs without the requirement of penetration. *See, e.g.*, N.C.G.S. § 14-27.20(4), (5) (2015) (defining, for purposes of rape and other sex offenses, the term "sexual act" as excluding vaginal intercourse, but including "*cunnilingus, fellatio*, analingus, . . . anal intercourse," and "the penetration, however slight, by any object into the genital or anal opening of another person's body," and the term "[s]exual contact" as "(i) touching the sexual organ, anus, breast, groin, or buttocks of any person, (ii) *a person touching another person with their own sexual organ*, anus, breast, groin, or buttocks, or (iii) a person ejaculating, emitting, or placing semen, urine, or feces upon any part of another person") (emphases added). Further, it is evident that the General Assembly was aware of other phraseology for conduct that involves touching of sex organs with the mouth but without a penetration requirement. *See also State v. Goodson*, 313 N.C. 318, 319, 327 S.E.2d 868, 869 (1985) (defining fellatio and oral sex, neither of which require penetration); *State v. Ludlum*, 303 N.C. 666, 672, 281 S.E.2d 159, 162 (1981) (defining cunnilingus as not requiring penetration).[4] The majority's

---

[4] Likewise, in contrast to the dearth of definitions for "oral intercourse" in general usage dictionaries, the term "oral sex" is defined—consistently—in such sources as the oral stimulation of another's sex organ, without any requirement of penetration. *See, e.g.*, *New Oxford American Dictionary* 1233 (3d ed. 2010) (defining oral sex as "sexual activity in which

*Morgan, J., concurring in part and concurring in result only in part.*

efforts to deftly move between and among this myriad of sexual acts in an effort to harmonize their definitions with the majority's brittle approach to statutory construction here present an awkward fit in the symmetry of the pertinent laws. Yet, in its wisdom, the General Assembly did not use any of those terms for purposes of sexual exploitation, instead selecting a word with a well-known, long-standing meaning: "intercourse."

Further indication of the intended meaning of the term "oral intercourse" can be derived from the General Assembly's focus in the definitions statute on distinguishing between sexual acts that involve penetration by the male sex organ and those which do not. The legislature chose to separately list "vaginal intercourse" and "anal intercourse"—acts the majority agrees require penetration of the vagina and anus with the male sex organ—in N.C.G.S. § 14-190.13(5)(b); penetration of the vagina and anus with any other body part or object—in N.C.G.S. § 14-190.13(5)(f); and mere touching of the male or female genital area—in N.C.G.S. § 14-190.13(5)(c). Despite this plain language regarding vaginal and anal sexual activity, the majority concludes that "oral intercourse" alone does not require penetration because the term was intended by the General Assembly "as a gender-neutral reference to 'cunnilingus'

---

the genitals of one partner are stimulated by the mouth of the other; fellatio or cunnilingus"); *The American Heritage Dictionary of the English Language* 1236 (4th ed. 2000) (defining oral sex as "oral stimulation of one's partner's sex organs"); *Merriam-Webster*, https://www.merriam-webster.com/dictionary/oral%20sex (last visited Nov. 27, 2017) ("oral stimulation of the genitals: cunnilingus, fellatio").

*Morgan, J., concurring in part and concurring in result only in part.*

or 'fellatio,' " neither of which requires penetration.[5]   The majority's interpretation results in a rather haphazard categorization of various types of sexual activity replete with redundancy and inconsistency.

In conclusion, I therefore would deem the touching of the genitals by the mouth without penetration to be included in N.C.G.S. § 14-190.13(5)(c) of the definitions statute.   I would hold that, as used in N.C.G.S. § 14-190.13, the General Assembly intended that the term "oral intercourse," like "vaginal intercourse" and "anal intercourse," requires penetration by the male sex organ, however slight.   Therefore, I determine that the instruction requested by defendant was "correct in law."   *See State v. Shaw*, 322 N.C. 797, 804, 370 S.E.2d 546, 550 (1988).

Because defendant's requested instruction was raised by the evidence presented and is legally correct, I would further hold that the trial court erred in refusing to give it, "at least in substance."   *See id.* at 804, 370 S.E.2d at 550 (citing

---

[5] I would note that if the legislature wished to refer to "cunnilingus" and "fellatio," it could have simply used those two well-defined words in lieu of the previously undefined two-word phrase "oral intercourse."   *See, e.g., Ludlum*, 303 N.C. at 672, 281 S.E.2d at 162 (holding that "the Legislature intended by its use of the word cunnilingus to mean stimulation by the tongue or lips of any part of a woman's genitalia" and not requiring penetration); *State v. Smith*, 362 N.C. 583, 593, 669 S.E.2d 299, 306 (2008) (defining "fellatio" as "any touching of the male sexual organ by the lips, tongue, or mouth of another person" and thus not requiring penetration) (quoting *State v. Johnson*, 105 N.C. App. 390, 393, 413 S.E.2d 562, 564, *appeal dismissed and disc. review denied*, 332 N.C. 348, 421 S.E.2d 158 (1992)).   If the General Assembly wished to employ a gender-neutral term, it could have used another two-word phrase—"oral sex"—which "describe[es] a sexual act involving 'contact between the mouth of one party and the sex organs of another,' " but not requiring penetration.   *Goodson*, 313 N.C. at 319, 327 S.E.2d at 869 (quoting *People v. Dimitris*, 115 Mich. App. 228, 234, 320 N.W.2d 226, 228 (1981) (per curiam)).

*Morgan, J., concurring in part and concurring in result only in part.*

*State v. Howard*, 274 N.C. 186, 162 S.E.2d 495 (1968)). Nonetheless, I do not believe defendant should receive a new trial based on this error, because a defendant is not entitled to a new trial unless he can also show prejudice, meaning there is "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (2015); *see also Shaw*, 322 N.C. at 804, 370 S.E.2d at 550. When a defendant fails to meet this burden, an instructional error will not merit relief. N.C.G.S. § 15A-1443(a); *see also Shaw*, 322 N.C. at 804, 370 S.E.2d at 550. In my view, defendant has failed to show prejudice and therefore is not entitled to a new trial. Accordingly, I ultimately concur with the result reached by the majority, although based on different reasoning.